**UNITED STATES of America ex rel. Joel SMITH, Petitioner-Appellee,**

v.

**Ernest L. MONTANYE, Superintendent of Attica Correctional Facility, Respondent-Appellant.**

No. 349, Docket 74–2158.

United States Court of Appeals, Second Circuit.

Argued Oct. 4, 1974.

Decided Nov. 8, 1974.

William Epstein, New York City, (William J. Gallagher, The Legal Aid Society, Federal Defender Services Unit, New York City, on the brief), for petitioner-appellee.

Barbara Ann Shore, Asst. Atty. Gen. of the State of New York (Louis J. Lefkowitz, Atty. Gen. of the State of New York, on the brief, Samuel A. Hirshowitz, First Asst. Atty. Gen., of counsel), for respondent-appellant.

Before HAYS, ANDERSON and MANSFIELD, Circuit Judges.

HAYS, Circuit Judge:

This is an appeal from an order of the United States District Court for the Eastern District of New York granting petitioner's application for a writ of habeas corpus. The district court concluded that petitioner had been denied fundamental due process during his trial in the state court both because of the instructions under which the case was submitted to the jury, and because of the admission into evidence of statements made by a codefendant, Leroy Sprinkler, who did not testify at trial. We reverse the order of the district court.

This case stems from the fatal stabbing of one Jesse Cross in 1959 in a playground in the Bedford-Stuyvesant section of Brooklyn. Petitioner Joel Smith was indicted for manslaughter in the first degree and assault in the second degree, as were three codefendants, Leroy Sprinkler, Fred Sprinkler, and Allen LaFrank. Subsequently, codefendants Fred Sprinkler and Allen LaFrank pleaded guilty, and only Leroy Sprinkler stood trial with petitioner in a New York state court in Kings County.

Neither petitioner nor Leroy Sprinkler testified at trial. The two codefendants who pleaded guilty prior to trial and two other boys who had also been present at the playground on the night of the killing all testified that on the day in question the witnesses, the defendants and Jesse Cross, the deceased, had spent the afternoon and evening hours drinking heavily. At about ten p. m. Cross and Fred Sprinkler quarreled and a scuffle ensued during which petitioner Joel Smith produced a knife and initiated an advance toward Cross. Fred Sprinkler stopped petitioner from reaching Cross, took the knife (which had been removed from Smith's hand by LaFrank) and stabbed Cross four times.

Although there was no direct testimony that petitioner had also stabbed Cross, Fred Sprinkler and another witness who had not been at the playground that night testified that later that evening they had met petitioner Joel Smith who told them that Jesse Cross had survived the wounds inflicted by Fred Sprinkler and that Smith himself had then stabbed Cross twice more.[1]

This latter testimony was corroborated by two statements made by nontestifying codefendant Leroy Sprinkler. First, a redacted statement by Leroy Sprinkler was read into evidence with the court charging the jury that the statement was to be considered only against Leroy Sprinkler. That statement concerned Leroy Sprinkler's part in the original fight and, as redacted, asserted that the later meeting with Smith had occurred, but omitted what Joel Smith had said as to his having himself inflicted the fatal stab wounds. Second, Detective Burnes, again with the court's admonishment that the statements were not to be considered against petitioner, was permitted to testify as to

[1.] Medical testimony indicated that nine of the fourteen wounds found in the body of the deceased could have caused death, but that it could not be determined with particularity which one had actually caused death, or precisely when death occurred.

conversations with Leroy Sprinkler in which Sprinkler implicated himself and his brother and, also, described the later meeting with Joel Smith.

Also testifying for the State was Detective Reiter who related that on the day after the killing petitioner had led him to the hidden knife.

Petitioner and Leroy Sprinkler were found guilty of manslaughter in the first degree[2] and on October 28, 1959, petitioner was sentenced to a term of 10 to 20 years imprisonment.

Although petitioner failed to take an appeal, this court held in United States ex rel. Smith v. McMann, 417 F.2d 648 (2d Cir. 1969) (en banc), cert. denied, 397 U.S. 925, 90 S.Ct. 929, 25 L.Ed.2d 105 (1970), that if, as petitioner argued, he had not been informed by his court-appointed counsel or anyone else of his right to appeal without personal expense to himself, he had in effect been denied the right of appeal in violation of the equal protection clause and consequently must be released unless his appeal was reinstated. On January 16, 1972, therefore, following a hearing, petitioner had his sentence vacated in state court, and was re-sentenced *nunc pro tunc* so that he might file a timely notice of appeal. Petitioner then pursued his state appellate remedies. On November 20, 1972, the Appellate Division, Second Judicial Department, affirmed his conviction without opinion. People v. Smith, 40 A. D.2d 953, 337 N.Y.S.2d 498 (1972). Leave to appeal was denied by Judge Burke of the New York Court of Appeals on December 26, 1972.

By petition dated February 13, 1974, petitioner sought the instant writ of habeas corpus in the United States District Court for the Eastern District of New York, urging, *inter alia,* that the trial judge's instructions to the jury had

been so defective as to deprive petitioner of a fair trial and that the use of statements made by non-testifying codefendant Leroy Sprinkler was in violation of petitioner's constitutional right to confront the witness against him.

Judge Dooling ruled that the petition was sufficient but found that neither of the predicate arguments had been properly presented to the state courts. Accordingly, he refrained from granting the writ until petitioner could seek review of these issues in the state court.

Petitioner thereupon moved in the Appellate Division, Second Department, for reargument of his former appeal on the grounds suggested in Judge Dooling's memorandum. The Appellate Division on July 2, 1974, denied petitioner's motion to reargue the earlier appeal, saying:

"With due respect to any view which the United States District Court may have, this court has considered all the issues on this motion and the predicate appeal. We adhere to our position after reconsideration and trust that the Federal court will likewise respect the autonomous jurisdiction of this court over the subject matter of the appeal." Order of the Appellate Division, Second Judicial Department, July 2, 1974.

Thereafter, on August 15, 1974, Judge Dooling granted the writ and, relying on the reasoning set forth in his Memorandum and Order of April 9, 1974, sustained both of petitioner's constitutional arguments. It is the State's appeal from this grant of habeas corpus which is before us now.

We hold that the district court erred in granting petitioner's writ of habeas corpus because petitioner has failed to exhaust available state judicial remedies as required by 28 U.S.C. § 2254(b) and (c).[3] In his decision of April 9, 1974,

---

2. Leroy Sprinkler's conviction was later reversed on the ground of insufficiency of the evidence. People v. Sprinkler, 14 A.D.2d 888, 221 N.Y.S.2d 149 (2d Dep't 1961).

3. "§ 2254. State custody; remedies in State courts.

"(b) An application for a writ of habeas corpus in behalf of a person in custody

Judge Dooling indicated that two matters remained for full consideration by the state courts: whether the charge to the jury taken as a whole violated petitioner's right to a fair trial and whether the admission into evidence of out-of-court statements by non-testifying codefendant Leroy Sprinkler violated petitioner's confrontation rights under the rule of Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), made retroactive in Roberts v. Russell, 392 U.S. 293, 88 S.Ct. 1921, 20 L.Ed.2d 1100 (1968). Whether or not petitioner exhausted his state remedies with respect to his challenge to the jury instructions, he has clearly not done so with respect to the Bruton issue. In a similar case the New York Court of Appeals said:

> "The normal appellate process having been exhausted, we deem it preferable . . . to have the question considered and passed upon by the court in which the appellant was originally tried and convicted on a writ of error *coram nobis.* . . .
>
> "It is, therefore, our conclusion that in this case and, for the future, *in all cases in which the normal appellate process has been exhausted or is no longer available* . . ., a defendant complaining of the prejudicial impact upon him of a codefendant's out-of-court statements at a joint trial must seek relief by resort to a writ of error *coram nobis.*" (Emphasis in original.) People v. Pohl, 23 N.Y.2d 290, 292, 296 N.Y.2d 352, 353–354, 244 N.E.2d 47, 49 (1968).

■ This court has held that the procedure outlined in People v. Pohl, supra,

must be adhered to before a federal habeas corpus petition based on *Bruton* grounds will be entertained. United States ex rel. Smith v. Follette, 405 F.2d 1199, 1201 (2d Cir. 1969); United States ex rel. Sloan v. McMann, 415 F.2d 275 (2d Cir. 1969); United States ex rel. Headley v. Mancusi, 415 F.2d 277 (2d Cir. 1969), cert. denied, 399 U.S. 932, 90 S.Ct. 2265, 26 L.Ed.2d 802 (1970); but cf. United States ex rel. Ross v. LaVallee, 448 F.2d 552 (2d Cir. 1971). Despite the express directive both of the New York Court of Appeals and of this court, petitioner failed to apply to the state trial court for relief; instead he merely raised the constitutional issues on a motion to reargue addressed to the Appellate Division, pursuant to § 470.50, N.Y.C.P.L. (McKinney's Consol.Laws, c. 11–A, 1971) providing for reargument or reconsideration of an appeal "in the interest of justice and for good cause shown" in the discretion of the appellate court. Further, even if the course of action which petitioner has followed were permissible, and at least with respect to the *Bruton* issue, it is not, People v. Pohl, supra, petitioner still failed to exhaust his state remedies in that there is no evidence that he filed for leave to appeal to the New York Court of Appeals, even though such an application could have been timely filed after the Appellate Division's denial of petitioner's motion on July 2, 1974, and before petitioner's return to the federal courts.

■ However, not only because of our uncertainty as to whether further review by the state courts is *presently* available to petitioner,[4] but also in order

pursuant to the judgment of a State court shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State, or that there is either an absence of available State corrective process or the existence of circumstances rendering such process ineffective to protect the rights of the prisoner.

"(c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the mean-

ing of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented."

4. Although N.Y.C.P.L. § 440.10(1)(h) (McKinney 1971), the successor to the writ of error *coram nobis*, normally provides an adequate post-conviction procedure to adjudicate previously unconsidered constitutional claims, we are uncertain in this case whether the Appellate Division's statement accompanying

to avoid further litigation in this instance, where petitioner's case has been before various courts continually since 1959, we decline to rest our reversal of the district court's order solely on the ground that petitioner has failed to exhaust his state court remedies; we further hold that neither of the grounds alleged by petitioner properly raised a constitutional issue of deprivation of due process.

■ The district court erred in holding that the jury charge was constitutional error. A jury charge in a state trial is normally a matter of state law and is not reviewable on federal habeas corpus absent a showing that the alleged errors were so serious as to deprive defendant of a federal constitutional right. Cupp v. Naughten, 414 U.S. 141, 94 S. Ct. 396, 38 L.Ed.2d 368 (1973); Schaefer v. Leone, 443 F.2d 182 (2d Cir.), cert. denied, 404 U.S. 939, 92 S.Ct. 277, 30 L.Ed.2d 251 (1971). See also Gryger v. Burke, 334 U.S. 728, 731, 68 S.Ct. 1256, 92 L.Ed. 1683 (1948).

"Before a federal court may overturn a conviction resulting from a state trial in which this instruction was used, it must be established not merely that the instruction is undesirable, erroneous, or even 'universally condemned,' but that it violated some right which was guaranteed to the defendant by the Fourteenth Amendment." Cupp v. Naughten, supra, 414 U.S. at 146, 94 S.Ct. at 400.

■ Petitioner urges that the charge was erroneous in that it failed to charge

on intoxication or its possible effect on intention, that it improperly instructed the jury on the failure of petitioner to testify at trial and that it was confusing in a variety of ways. Whether or not the jury charge under consideration here is reversible as a matter of state law, the alleged errors are not of constitutional dimension. Defendant received a full and fair hearing and the trial judge's charge did not deprive defendant of his fundamental right to due process of law. It should be noted in addition that defendant's counsel did not request a specific charge, nor did he make objection to the judge's charge on any of the points currently before this court.

■ Petitioner's claim that his conviction must be reversed because the admission into evidence of non-testifying codefendant Leroy Sprinkler's statements inculpating petitioner violated his Sixth Amendment confrontation rights under the rule of Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968) should also have been rejected by the district court. As was recognized in *Bruton* itself, the mere introduction into evidence of a statement by a non-testifying codefendant does not automatically mandate reversal on *Bruton* grounds. 391 U.S. at 135, 88 S.Ct. 1620. Rather, the *Bruton* decision is addressed to those "contexts in which the risk that the jury will not, or cannot, follow instructions is so great, and the consequences of failure so vital to the defendant, that the practical and human limitations of the jury system cannot be ignored." Id. This Circuit has recognized in a line of cases be-

its denial of petitioner's motion to reargue that "it has considered all the issues on this motion and the predicate appeal" would be viewed by lower state courts as a "determination on the merits by New York state courts upon direct appeal from the judgment of conviction," in which case the lower court would be required to deny a § 440.10 motion. N.Y. C.P.L. § 440.10(2)(a) (McKinney 1971). In addition, even were it held that the merits of petitioner's constitutional challenges were

not determined on appeal, further state court review of the charge to the jury may be foreclosed since under N.Y.C.P.L. § 440.-10(2)(c) a motion to vacate a judgment must be denied where sufficient facts appear in the record to have permitted adequate appellate review of an issue and the issue was nevertheless not raised on appeal. See United States ex rel. Leeson v. Damon, 496 F.2d 718, 721 (2d Cir. 1974).

**1360**

ginning with Catanzaro v. Mancusi, 404 F.2d 296 (2d Cir. 1968), cert. denied, 397 U.S. 942, 90 S.Ct. 956, 25 L.Ed.2d 123 (1970), that, when this "devastating" risk is not present, the Bruton rule is inapplicable.[5] Although Catanzaro and its progeny dealt with the situation in which a defendant himself had confessed and his confession interlocked with and supported the confession of a non-testifying codefendant, the same considerations which prompted this Circuit to develop the "interlocking confessions" exception to the Bruton rule are clearly applicable here. Like those cases, the instant case is not similar to Bruton, in which the "powerfully incriminating extrajudicial statements of a codefendant," 391 U.S. at 135, 88 S.Ct. at 1628, added "substantial, perhaps even critical, weight to the Government's case in a form not subject to cross-examination. . . ." Id. at 128, 88 S.Ct. at 1623. Here the content of Leroy Sprinkler's statements is substantially identical to that of two other testifying witnesses and does not implicate petitioner any more in the commission of the crime than does their independent testimony which was subject to full cross-examination. Thus in contrast to Bruton, here the jury had the benefit of oral testimony of two witnesses who testified to the same allegations and who were at all times available for cross-examination on the same matters as would have been the non-appearing defendant, Leroy Sprinkler. As was true in Catanzaro "no such 'devastating' risk attends the lack of confrontation as was thought to be involved in Bruton." 404 F.2d at 300. Under these circumstances, a limiting instruction such as was given here was sufficient adequately to protect defendant's constitutional rights, notwithstanding Bruton.

Reversed.

---

5. United States v. DeBerry, 487 F.2d 448, 452 (2d Cir. 1973) ; United States ex rel. Duff v. Zelker, 452 F.2d 1009 (2d Cir. 1971), cert. denied, 406 U.S. 932, 92 S.Ct. 1807, 32 L.Ed.2d 134 (1972) ; United States ex rel. Nelson v. Follette, 430 F.2d 1055, 1058–1059 (2d Cir. 1970), cert. denied sub nom., Nelson v. Zelker, 401 U.S. 917, 91 S. Ct. 899, 27 L.Ed.2d 818 (1971) ; United States ex rel. Sloan v. McMann, 415 F.2d 275, 277 (2d Cir. 1969) ; United States ex rel. Dukes v. Wallack, 414 F.2d 246 (2d Cir. 1969).