**Domingo CASILLAS,**
**Petitioner-Appellant,**

v.

**Charles SCULLY, Superintendent, Green Haven Correctional Facility, Stormville, New York, Respondent-Appellee.**

**No. 1180, Docket 85–2023.**

United States Court of Appeals,
Second Circuit.

Argued May 8, 1985.
Decided July 25, 1985.

Domenick J. Porco, New York City, for petitioner-appellant.

Richard T. Faughnan, Asst. Dist. Atty., Brooklyn, N.Y. (Elizabeth Holtzman, Dist. Atty., Kings County, Barbara D. Underwood, Asst. Dist. Atty., Brooklyn, N.Y., on brief), for respondent-appellee.

Before MESKILL, KEARSE and WINTER, Circuit Judges.

KEARSE, Circuit Judge:

Petitioner Domingo Casillas, a New York State prisoner, appeals from a judgment of the United States District Court for the Eastern District of New York, I. Leo Glasser, *Judge,* dismissing his petition for a writ of habeas corpus against Charles Scully, Superintendent of Green Haven Correctional Facility (hereinafter the "State"), asserting principally that the refusal of the state trial court to give a lesser-included-offense charge in its instructions to the jury denied him the fair trial guaranteed by the Sixth and Fourteenth Amendments to the Constitution and that the affirmance of that ruling by the state appellate court on the basis of a newly decided case violated the *Ex Post Facto* Clause of the Constitution. The district court denied the petition on the ground that the state courts' rulings were not erroneous and that even if erroneous there was no error of constitutional magnitude. On appeal, Casillas renews the contentions he made below. Finding no merit in his arguments, we affirm the judgment of the district court.

## I. BACKGROUND

As a result of a robbery at a Brooklyn, New York social club, during which one of the club's patrons was killed, Casillas was charged with murder in the second degree (felony murder), N.Y.Penal Law § 125.25(3) (McKinney 1975 & Supp.1975–1984) and criminal possession of a weapon in the second degree, N.Y.Penal Law § 265.03 (McKinney 1980). He was convicted after a jury trial and is serving concurrent prison terms of twenty years to life on the murder count and five to fifteen years on the weapon count.

The prosecution's theory at trial was that Casillas had master-minded and participated in the robbery and was therefore guilty of having aided and abetted a felony murder. The defense position was that Casillas's only participation in the robbery was lending his car to others with the knowledge it would be used in the commission of a crime.

### A. *The State Court Proceedings*

Since there is no dispute as to the sufficiency of the evidence to convict Casillas, a brief summary of the proof at trial will suffice. The prosecution presented its case chiefly through the testimony of the police detective who investigated the robbery and Hector Rivera ("Hector"), who had pleaded guilty to felony murder for his involvement in the robbery, and through the introduction of a videotaped interview given by Casillas to the prosecutors during the investigation.

On May 3, 1980, Casillas told his friend Julio Otero ("Richie"), and Richie's brother Alfredo that there would be a lot of money that night at a crap game at the social club and suggested that the club be robbed. Casillas drove the Oteros to another location where they picked up Hector, Hector's brother, and Reinaldo Hernandez. Alfredo asked these three if they would like to make $10,000, and Casillas described for them the crap game and the ease with which the robbery could be executed. Casillas then drove the group to Richie's house, where Richie, who was in the front

seat with Casillas, said, "Let's go downstairs and we will get the guns." Richie and the Rivera brothers obtained a rifle and a handgun from Richie's basement.

Casillas then drove the group to the club, showed them where the back door was located and told one of them to enter through that door and the others to use the front door. Casillas told them he would be in the club when they entered and he would signal them, by rubbing his head, which patron had the most money.

Shortly thereafter, with Casillas already in the club, three men entered, announced the robbery, fired a warning shot, and told the patrons to lie face down on the floor. Casillas lay down and rubbed his head. As the robbers were searching the patrons, one started to get up; when Hector pushed him down, Hector's gun discharged, fatally wounding the patron. The robbers fled, using Casillas's car. Although Casillas remained at the scene and told police that the robbers had stolen his money, his keys and his car, the investigators became suspicious of him when they found that the car had been left in front of his place of employment, two blocks away from the club.

In his videotaped interview, Casillas admitted that he had suggested the robbery to Richie and had driven the group to the club, but stated that he had rejected Richie's offer to share in the proceeds. He stated that he had not heard any conversation in his car about guns and had not known the men would be armed.

Arguing that his only participation in the robbery had been to lend his car to the robbers, Casillas asked the trial court to instruct the jury, *inter alia*, that if it accepted this version of the facts it could find him guilty of the offense of criminal facilitation in the fourth degree, as a lesser-included offense of aiding and abetting a felony murder. The trial judge declined to give this instruction. The jury found Casillas guilty of felony murder and criminal possession of a weapon, and he was sentenced as indicated above.

Casillas appealed to the Appellate Division, arguing, *inter alia*, that the trial court had erred in refusing to give the requested lesser-included-offense charge. The Appellate Division affirmed the conviction without opinion. *People v. Casillas*, 89 A.D.2d 1063, 454 N.Y.S.2d 566 (2d Dep't 1982).

Casillas then moved for leave to appeal to the New York Court of Appeals, pursuing the arguments he had made in the Appellate Division and adding the contention that, in rejecting his lesser-included-offense claim, the Appellate Division had relied on *People v. Glover*, 57 N.Y.2d 61, 453 N.Y.S.2d 660, 439 N.E.2d 376 (1982) (per curiam), which was decided after Casillas's trial, and hence had violated the *Ex Post Facto* Clause of the Constitution. Leave to appeal was denied without opinion.

B. *The Present Proceeding and the Decision Below*

Having exhausted his state court remedies, Casillas filed the present petition for habeas corpus in the district court, contending that various rulings of the trial court had deprived him of due process and his right to a fair trial. The district court denied the petition in all respects.

With respect to the lesser-included-offense claims, the district court concluded that the trial court had correctly refused to give such a charge because the evidence did not warrant it. The district court concluded that Casillas's complaint that the Appellate Division had violated the *Ex Post Facto* Clause in affirming the denial of the lesser-included-offense charge had no merit because, since the affirmance was without opinion, there was no indication that the court had relied on *People v. Glover*, and that, in any event, *Glover* did not establish a new principle of law.

## II. DISCUSSION

On appeal, Casillas pursues the various claims of error he raised in his petition. We have considered all of his arguments and find them without merit. Only the lesser-included-offense claim and the *Ex Post Facto* claim warrant discussion.

## A. *Criminal Facilitation as a Lesser-Included Offense*

In order to obtain a writ of habeas corpus in federal court on the ground of error in a state court's instructions to the jury on matters of state law, the petitioner must show not only that the instruction misstated state law but also that the error violated a right guaranteed to him by federal law. *See* 28 U.S.C. § 2254 (1982); *Cupp v. Naughten,* 414 U.S. 141, 146, 94 S.Ct. 396, 400, 38 L.Ed.2d 368 (1973); *United States ex rel. Smith v. Montanye,* 505 F.2d 1355, 1359 (2d Cir.1974), *cert. denied,* 423 U.S. 856, 96 S.Ct. 106, 46 L.Ed.2d 81 (1975). In an effort to meet the latter requirement with respect to his lesser-included-offense claim, Casillas relies in part on *Beck v. Alabama,* 447 U.S. 625, 100 S.Ct. 2382, 65 L.Ed.2d 392 (1980), in which the Supreme Court held that a statute forbidding the submission to the jury of a lesser-included-offense charge in a capital case violated the defendant's right to due process. Casillas urges that we extend *Beck* to noncapital cases and find that the refusal of the state trial court in his case to give the requested charge on criminal facilitation denied him due process. We decline to so find since, even were we to agree that *Beck* should be so extended, there is no merit in the contention that criminal facilitation was a lesser-included offense of aiding and abetting a felony murder.

Preliminarily we note that *Beck,* which involved a request that the jury be charged on felony murder as a lesser-included offense of "[r]obbery or attempts thereof when the victim is intentionally killed by the defendant," Ala.Code § 13–11–2(a)(2) (1975), is entirely distinguishable from the present case. Under the Alabama statutes, there was no question that (a) felony murder was a lesser offense included within the offense with which the defendant had been charged, (b) the evidence established that the petitioner could have been guilty of the lesser without being guilty of the greater, and (c) but for another statutory provision prohibiting the submission of lesser-included-offense charges to the jury in capital cases, the jury would have been

given such a charge. The Supreme Court ruled that "the death penalty may not be imposed under these circumstances." 447 U.S. at 627, 100 S.Ct. at 2384. The Court noted that

> [w]hile we have never held that a defendant is entitled to a lesser included offense instruction as a matter of due process, the nearly universal acceptance of the rule in both state and federal courts establishes the value to the defendant of this procedural safeguard. That safeguard would seem to be especially important in a case such as this....

*Id.* at 637, 100 S.Ct. at 2389. It concluded that where the evidence provides a basis for doubting some element of the crime with which the defendant is charged, the refusal to give a lesser-included-offense charge creates the risk of an unwarranted conviction. "Such a risk cannot be tolerated in a case in which the defendant's life is at stake." *Id.* Pointing out that "there is a significant constitutional difference between the death penalty and lesser punishments," *id.,* the Court stated that "[w]e need not and do not decide whether the Due Process Clause would require the giving of such instructions in a noncapital case." *Id.* at 638 n. 14, 100 S.Ct. at 2390 n. 14.

█ In the present case, we need not decide whether due process requires the giving of lesser-included-offense instructions in a noncapital case since we conclude that under New York law, criminal facilitation in the fourth degree was not a lesser-included offense within felony murder.

New York law defines a lesser-included offense as follows:

> When it is impossible to commit a particular crime without concomitantly committing, by the same conduct, another offense of lesser grade or degree, the latter is, with respect to the former, a "lesser included offense."

N.Y.Crim.Proc.Law § 1.20(37) (McKinney 1981). The circumstances in which the trial judge may or must submit a lesser-included

offense to the jury are set out in *id.* § 300.50 (McKinney 1982), which provides, in pertinent part, as follows:

> 1. In submitting a count of an indictment to the jury, the court in its discretion may, in addition to submitting the greatest offense which it is required to submit, submit in the alternative any lesser included offense if there is a reasonable view of the evidence which would support a finding that the defendant committed such lesser offense but did not commit the greater. . . .
>
> 2. If the court is authorized by subdivision one to submit a lesser included offense and is requested by either party to do so, it must do so.

Section 1.20(37) has been interpreted by the New York Court of Appeals to mean that "one crime cannot be a lesser included offense of another if it is theoretically possible to commit the greater crime without concomitantly committing the lesser." *People v. Ramirez,* 55 N.Y.2d 708, 710, 447 N.Y.S.2d 138, 138, 431 N.E.2d 623, 623 (1981); *accord People v. Glover,* 57 N.Y.2d 61, 453 N.Y.S.2d 660, 439 N.E.2d 376 (1982) (per curiam); *People v. Miguel,* 53 N.Y.2d 920, 923, 440 N.Y.S.2d 923, 924–25, 423 N.E.2d 400, 401–02 (1981). Section 300.50 has been interpreted to mean that

> [i]n order to be entitled to have [the lesser] offense submitted, defendant was required to show *both* that the offense is, in fact, a lesser included offense within one of the ... charged crimes *and* that "there is a reasonable view of the evidence which would support a finding that the defendant committed [the lesser offense but did not commit the] greater."

*People v. Miguel,* 53 N.Y.2d at 922, 440 N.Y.S.2d at 924, 423 N.E.2d at 401 (quoting § 300.50; emphasis in original); *accord People v. Greer,* 42 N.Y.2d 170, 173–74, 397 N.Y.S.2d 613, 616, 366 N.E.2d 273, 276 (1977). Where the defendant cannot show that it is in theory impossible to commit the greater crime without committing the lesser, he is not entitled to the lesser-included-offense instruction, regardless of whether or not a "reasonable view of the evidence"

might sustain a verdict of guilty only on the lesser offense. *People v. Miguel,* 53 N.Y.2d at 923, 440 N.Y.S.2d at 924–25, 423 NE.2d at 401–02.

The statutory definitions of the crimes pertinent here do not reflect the theoretical impossibility needed to make criminal facilitation a lesser-included offense of the crime with which Casillas was charged. New York's felony murder provision provides, in pertinent part, as follows:

> A person is guilty of murder in the second degree when:
>
> . . . .
>
> 3. Acting either alone or with one or more other persons, he commits or attempts to commit robbery, ... and, in the course of and in furtherance of such crime or of immediate flight therefrom, he, or another participant, if there be any, causes the death of a person other than one of the participants . . . .

N.Y.Penal Law § 125.25(3) (McKinney Supp.1975–1984). The offense of criminal facilitation in the fourth degree, a misdemeanor, is defined in *id.* § 115.00 as follows:

> A person is guilty of criminal facilitation in the fourth degree when, believing it probable that he is rendering aid:
>
> 1. to a person who intends to commit a crime, he engages in conduct which provides such person with means or opportunity for the commission thereof and which in fact aids such person to commit a felony . . . .

Under these provisions, it is not theoretically impossible to commit the crime of felony murder without also committing the crime of criminal facilitation. A person may commit a robbery alone and in the course of that robbery kill another; there is no theoretical requirement that he have aided anyone in the commission of the crime. Thus, the offense of criminal facilitation is not entirely included within the crime of felony murder.

Casillas argues that we must reach the contrary conclusion in his case because he was charged with felony murder as an accessory rather than as an actual perpetrator, and that criminal facilitation is indeed included within the offense of being an

accessory to a crime. We reject this argument as well. An accessory is defined as one who "solicits, requests, commands, importunes, or intentionally aids" another to commit a crime. N.Y.Penal Law § 20.00 (McKinney 1975). Since "intentionally aid[ing]" is only one of several ways in which a person may be found an accessory, it is theoretically possible to be an accessory without having aided.

■ In sum, since it is theoretically possible to commit the crime of felony murder, either as a primary participant or as an accessory, without providing another person with the means or opportunity for the commission of the crime, the offense of criminal facilitation is not included within the crime of felony murder, and Casillas was not entitled to a lesser-included-offense instruction.

B. *The* Ex Post Facto *Contention*

Casillas contends that the Appellate Division rejected his lesser-included-offense argument on appeal on the basis of *People v. Glover*, 57 N.Y.2d 61, 453 N.Y.S.2d 660, 439 N.E.2d 376, which had been decided after Casillas's trial, and that the application of the *Glover* principle to his case violated the *Ex Post Facto* Clause. Even assuming that the Appellate Division, which affirmed without opinion, relied on *Glover*, we find no merit in this argument since *Glover* did not change the existing law.

■ While the *Ex Post Facto* Clause limits the powers of the legislature and does not, of its own force, apply to the judiciary, *Marks v. United States*, 430 U.S. 188, 191, 97 S.Ct. 990, 992, 51 L.Ed.2d 260 (1977), notions of due process prevent the enlargement of a criminal statute through judicial interpretation from being applied retroactively: "the principle on which the [*Ex Post Facto*] Clause is based—the notion that persons have a right to fair warning of that conduct which will give rise to criminal penalties—is fundamental to our concept of constitutional liberty.... As such, that right is protected against judicial action by the Due Process Clause of the Fifth

Amendment," *id.* at 191–92, 97 S.Ct. at 992–93. "[A]n unforeseeable judicial enlargement of a criminal statute, applied retroactively, operates precisely like an *ex post facto* law," and thus would not withstand scrutiny under the Due Process Clause. *Bouie v. City of Columbia*, 378 U.S. 347, 353–54, 84 S.Ct. 1697, 1702–03, 12 L.Ed.2d 894 (1964).

■ *People v. Glover*, however, was not "an unforeseeable judicial enlargement of a criminal statute." *Glover* held that to establish entitlement to a lesser-included-offense charge, the defendant must first show "that it is theoretically impossible to commit the greater crime without at the same time committing the lesser," and must also show "that there is a reasonable view of the evidence in the particular case that would support a finding that he committed the lesser offense but not the greater." 57 N.Y.2d at 63, 453 N.Y.S.2d at 661, 439 N.E.2d at 377. As discussed in Part II.A, above, these standards had been set in earlier cases, and the *Glover* court accurately observed that "[t]his is the manner in which we have recently recognized that this two-pronged test is to be applied." *Id.* at 64, 453 N.Y.S.2d at 661–62, 439 N.E.2d at 377–78 (citing *People v. Ramirez* and *People v. Miguel*). We conclude that *Glover* did not introduce a change in the law and that there was no violation of the *Ex Post Facto* Clause.

CONCLUSION

The judgment of the district court denying the petition is in all respects affirmed.