**John CARTER, Petitioner,**

v.

**Supt. K. PERLMAN, Respondent.**

**No. 03–CV–4200 (ADS).**

United States District Court, E.D. New York.

April 6, 2006.

John Carter, Johnstown, NY, Pro Se Plaintiff.

Thomas Spota, Suffolk County District Attorney, by Assistant District Attorney Michael Blakey, Riverhead, NY, for Respondent.

## MEMORANDUM OF DECISIONS AND ORDER

SPATT, District Judge.

John Carter (the "petitioner") petitions this Court for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 ("Section 2254"). The petitioner seeks to vacate the judgment of conviction and sentence, imposed following trial by jury in the County Court of Suffolk County, for two counts of Criminal Sale of a Controlled Substance in the Third Degree and two counts of Criminal Possession of a Controlled Substance in the Third Degree.

## I. BACKGROUND

### A. The Petitioner's Arrest

In August 1999, acting on information provided by a confidential informant, Suffolk County Police Department Detective Timothy Sheehan initiated an investigation into the activities of an alleged drug dealer known as "running man." At that time, Detective Sheehan was an eleven year veteran officer with four years of experience investigating narcotics crimes. Based on a combination of the informant's information and his own independent investigation, Detective Sheehan determined that "running man" was John Carter of Wyandanch, New York. Detective Sheehan had his informant contact Carter for the purpose of arranging a controlled purchase of $100.00 worth of crack cocaine.

On August 31, 1999 and September 1, 1999, Detective Sheehan purchased $100 worth of crack cocaine from the petitioner. On both occasions Detective Sheehan used pre-recorded United States currency and wore an audio recording device. Detective Sheehan was aware that the investigation into the "running man" was to close following the September 1, 1999 transaction. After the conclusion of the second controlled purchase on September 1, 1999, the police arrested Carter and took him into custody on a charge unrelated to the drug transactions. However, the police recovered the marked currency from Carter's possession that night.

Also on September 1, 1999, approximately an hour and a half after Carter's arrest, while waiting in a holding room at the Suffolk County Police Department's First Precinct, Detective Sheehan identified

Carter through a two-way mirror as the person from whom he purchased narcotics on August 31, 1999 and September 1, 1999.

On September 24, 1999, the State of New York formally charged the petitioner under an indictment with four drug-related offenses stemming from Detective Shee-han's August 31, 1999 and September 1, 1999 investigation. The petitioner was still in custody on the unrelated charge at this time. On September 25, 1999, the petitioner was arraigned on two counts of Criminal Possession of a Controlled Substance in the Third Degree and two counts of Criminal Sale of a Controlled Substance in the Third Degree pursuant to New York Penal Law § 220.16 and § 220.39, respectively.

## B. Detective Sheehan's Testimony

At the trial before the Honorable Anthony R. Corso, County Court of Suffolk County, the prosecution introduced in evidence and played the recordings of the August 31, 1999 and September 1, 1999 narcotics sales for the jury. Detective Sheehan testified as to the identification of the petitioner's voice on the audiotapes. Detective Sheehan testified that he purchased crack cocaine from the petitioner during the two controlled sales. Detective Sheehan also testified that the location where the transactions was well lit; he got a "clear look" at the face of the person he purchased the drugs from; that on August 31, 1999 he purchased the drugs from a person in a white Dodge Stealth; a white Dodge Stealth was registered to the petitioner at his current address

On cross-examination, the petitioner's attorney asked Detective Sheehan about the delay between the petitioner's arrest on September 1, 1999, and his arraignment on narcotics charges on September 25, 1999. The prosecution objected on the ground that the jury might infer that the petitioner was held in custody for three weeks without justification, and that such an inference would prejudice the State's case. After consultation with the court, defense counsel did not discuss this issue any further, but the prosecution sought an explanation for the delay on re-direct examination. As a result, in response to the prosecutor's question, Detective Sheehan testified that the petitioner was initially arrested for an unrelated charge, but did not specify what that other charge was. The petitioner's attorney did not object.

## C. The Jury Charge

At the conclusion of the trial, Judge Corso instructed the jury as follows:

The Court received in evidence, a tape recording of the conversation between the defendant, Detective Sheehan and a confidential informant on August 31, 1999, and also a telephone conversation between Detective Sheehan and Johnny Carter on September 1st, 1999, and the transaction of September 1st, 1999, between the defendant and Johnny Carter [sic] . . .

[I]t will be for you and you alone, to draw the conclusions and as to what was actually said and who said it. . . .

It will be for you and you, alone, to determine what was said and who said it, and you must make such determinations from what you hear on the tape recordings and not from what you read from the typewritten transcripts . . .

Thus, you should listen to and consider these tape recordings exactly as you would listen to any trial witness and you should assess and evaluate what you hear, just as you would any testimony or evidence taken from the witness stand and in the final analysis, it will be for you to determine both the credibility, what you heard and the property [sic] weight to be given to it.

The petitioner's attorney objected to that portion of the charge that identified the petitioner as one of the voices on the recordings.

### D. Sentencing

On June 20, 2000, the petitioner was convicted on all four charges. The petitioner was sentenced on September 12, 2000. At the sentencing hearing, the petitioner's trial attorney conceded that the petitioner had a history of drug use, and asked the trial court for a lenient sentence of three to six years. The petitioner's trial attorney further explained that, before trial, the petitioner was offered the opportunity to plead guilty to the four offenses for which he was convicted in exchange for four concurrent indeterminate prison sentences of three to six years. The petitioner rejected the deal because it was contingent on his willingness to also plead guilty to a robbery charge that Carter maintained he did not commit. The prosecution dismissed the robbery charge at the conclusion of the sentencing.

In response, the prosecution conceded that it planned to dismiss the robbery charge, but also urged the trial court to sentence the petitioner to four indeterminate sentences of twelve-and-a-half to twenty-five years in prison for the offenses arising from Detective Sheehan's investigation. Judge Corso sentenced the petitioner to concurrent indeterminate terms of six to twelve years in prison for each count.

### E. Post-trial Proceedings

On appeal, the petitioner argued that: (1) the trial court erred in admitting evidence concerning his previous arrest for an unrelated crime; (2) the trial court errantly charged the jury with respect to presence of the petitioner's voice on the audio tapes; (3) the petitioner was entitled to a *Wade* hearing concerning Detective Sheehan's station-house identification; and

(4) the petitioner should be re-sentenced by another judge.

On May 5, 2003 the Appellate Division, Second Department found that the petitioner "failed to preserve for appellate review his claim that the introduction into evidence of testimony that he was arrested on an unrelated charge ... constituted reversible error." *People v. Carter*, 305 A.D.2d 423, 758 N.Y.S.2d 513 (2d Dep't 2003). The Second Department dismissed the petitioner's "remaining contentions [as] either unpreserved for appellate review or without merit." *Id.* On July 11, 2003, the New York Court of Appeals denied the petitioner leave to appeal. 100 N.Y.2d 579, 796 N.E.2d 481, 764 N.Y.S.2d 389 (2003).

On July 11, 2003, the petitioner filed the instant petition in this Court for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The petitioner seeks to vacate the judgment of conviction and sentence imposed after a trial by jury on the same grounds for which he appealed the judgment of the trial court to the New York State appellate courts. Specifically, the petitioner claims that: (1) his lawyer's questioning that opened the door to introduction of his unrelated arrest constituted ineffective assistance of counsel; (2) the trial court denied him a fair trial in violation of the Due Process clause of the Fourteenth Amendment to the United States Constitution when it instructed the jury that his voice was one of the voices recorded on the audio tape played at the trial; and (3) the trial court's failure to hold a *Wade* hearing and to suppress the confirmatory identification at issue here constitutes a violation of his rights under the Sixth Amendment to the United States Constitution.

## II. DISCUSSION

Initially, the Court notes that it is mindful that the petitioner is proceeding *pro se*

and that his submissions should be liberally construed in his favor. *See Chang v. United States,* 250 F.3d 79, 86, n. 2 (2d Cir.2001).

## A. Standard of Review

The Antiterrorism and Effective Death Penalty Act (the "AEDPA") provides that a federal court may grant habeas relief to state prisoners with respect to any claim that was adjudicated on the merits in state court proceedings only if the adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *see also DeBerry v. Portuondo,* 403 F.3d 57, 66 (2d Cir.2005); *Wade v. Herbert,* 391 F.3d 135, 140 (2d Cir.2004). A state court's factual findings enjoy a "presumption of correctness" that the petitioner must rebut by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

"A state-court decision is 'contrary' to clearly established federal law within the meaning of § 2254(d)(1) if it is 'diametrically different' from, 'opposite in character or nature' to, or 'mutually opposed' to the relevant Supreme Court precedent." *Henry v. Poole,* 409 F.3d 48, 68 (2d Cir. 2005) (quoting *Williams v. Taylor,* 529 U.S. 362, 405, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000)) (internal quotation marks omitted). "A state court decision involves 'an unreasonable application' of clearly established Federal law if the state court applies Federal law to the facts of the case in an objectively unreasonable manner." *Brisco v. Phillips,* 376 F.Supp.2d 306, 311 (E.D.N.Y.2005); *see Brown v. Payton,* 544

U.S. 133, 125 S.Ct. 1432, 1439, 161 L.Ed.2d 334 (2005) (citing *Williams,* 529 U.S. at 405, 120 S.Ct. 1495, 146 L.Ed.2d 389); *Serrano v. Fischer,* 412 F.3d 292, 296 (2d Cir.2005) (citations omitted). "[I]it is well-established in [this] Circuit that the 'objectively unreasonable' standard of § 2254(d)(1) means that [a] petitioner must identify some increment of incorrectness beyond error in order to obtain habeas relief." *Rosa v. McCray,* 396 F.3d 210, 219 (2d Cir.2005) (citing *Cotto v. Herbert,* 331 F.3d 217, 248 (2d Cir.2003)). Under the AEDPA, a court does not decide "whether the state court correctly interpreted the doctrine of federal law on which the claim is predicated, but rather whether the state court's interpretation was unreasonable in light of the holdings of the United States Supreme Court at any time." *Brown v. Greiner,* 409 F.3d 523, 533 (2d Cir.2005); *see also Williams,* 529 U.S. at 405, 120 S.Ct. at 1495.

■ It is well-settled that "federal habeas corpus relief does not lie for errors of state law." *Lewis v. Jeffers,* 497 U.S. 764, 780, 110 S.Ct. 3092, 111 L.Ed.2d 606 (1990)). In this regard, the United States Supreme Court opined that "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *See Estelle v. McGuire,* 502 U.S. 62, 67–68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991), *United States ex rel. Smith v. Montanye,* 505 F.2d 1355, 1359, (2d Cir.1974) (citations omitted). On the contrary, "a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Id.* at 68, 112 S.Ct. 475 (citing 28 U.S.C. § 2241; *Rose v. Hodges,* 423 U.S. 19, 21, 96 S.Ct. 175, 46 L.Ed.2d 162 (1975) (per curiam)).

## B. Exhaustion

■ "An application for a writ of habeas corpus [on] behalf of a person in custody

pursuant to the judgment of a State court shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b). In the interest of comity and in keeping with the requirements of 28 U.S.C. § 2254(b), federal courts will not consider a constitutional challenge that has not first been "fairly presented" to the state courts. *See Ayala v. Speckard,* 89 F.3d 91, 94 (2d Cir.1996) (citing *Picard v. Connor,* 404 U.S. 270, 275, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971); *see also Rhines v. Weber,* 544 U.S. 269, 125 S.Ct. 1528, 1533, 161 L.Ed.2d 440 (2005). "[A] claim shall not be deemed exhausted so long as a petitioner 'has the right under the law of the State to raise, by any available procedure, the question presented.'" *Castille v. Peoples,* 489 U.S. 346, 350, 109 S.Ct. 1056, 103 L.Ed.2d 380 (1989) ("Read narrowly, this language appears to preclude a finding of exhaustion if there exists any possibility of further state-court review.").

■ In this case, the petitioner properly challenged the judgment against him to the Supreme Court of the State of New York, Appellate Division, Second Department. On appeal, the petitioner raised the grounds of (1) ineffective assistance of counsel; (2) due process related to the judge's instructions to the jury; and (3) the Court's failure to hold a *Wade* hearing. The petitioner sought leave to appeal to the Court of Appeals, but his application was denied. Therefore, the petitioner has exhausted his state court remedies with respect to the above-mentioned claims.

## C. Ineffective Assistance of Counsel

A petitioner seeking to have his conviction reversed on the basis of ineffective assistance of counsel must demonstrate that (1) "counsel's performance was deficient"; and (2) that "the deficient performance prejudiced the defense." *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct.

2052, 2064, 80 L.Ed.2d 674 (1984). In order to satisfy the first prong, a petitioner must show that his attorney's performance was "outside the wide range of professionally competent assistance." *Id.* at 689, 104 S.Ct. 2052. A court confronted with a claim for ineffective assistance of counsel must "indulge a strong presumption that counsel's conduct falls within the range of reasonable professional assistance." *Id.*

With respect to the second prong, the Supreme Court has recognized that a petitioner must "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694, 104 S.Ct. 2052. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* In this case the petitioner contends that his lawyer's performance was deficient for two reasons.

### 1. Cross–Examination

■ The petitioner's trial attorney cross-examined Detective Sheehan about the September 24, 1999 arrest report in order to show that the petitioner was in custody for approximately twenty-three days before being formally charged for his involvement in the August 31, 1999 and September 1, 1999 drug transactions. This line of interrogation opened the door for questioning concerning the petitioner's prior arrest on an unrelated charge. However, it was not unreasonable for the petitioner's attorney to attempt to arouse sympathy for his client by establishing the length of time the petitioner was in custody without being formally charged.

■ Even if the Court were to conclude that the trial attorney's conduct in this regard was so deficient as to fall outside the wide range of what is considered to be professionally competent assistance, the

petitioner was not prejudiced by this line of questioning to such an extent that it could have altered the verdict. Detective Sheehan's testimony concerning the petitioner's unrelated charge was limited to a mere confirmation that it did in fact exist. There was no discussion as to the nature of this other charge or any related proceedings.

By contrast, the prosecution presented, among other evidence, Detective Sheehan's identification of the petitioner; the audio recordings incriminating the petitioner in drug transactions; and the marked currency. Considering this other overwhelming evidence of the petitioner's guilt, his contention that he was prejudiced by any error that resulted in the non-specific mention of an unrelated charge is insufficient to disturb the jury's verdict. Accordingly, the petitioner's ineffective assistance of counsel claim based on his lawyer's cross-examination of Detective Sheehan is denied.

### 2. Sentencing

■ At sentencing, the petitioner's trial attorney conceded that the prosecution had a strong case against the petitioner, and advised his client to admit his previous involvement with narcotics. However, trial counsel also explained that the petitioner was twenty-five years old at the time, and urged the trial court to impose a lenient sentence of approximately three to six years. The petitioner's attorney also explained, as did the petitioner himself, that Carter was amenable to pleading guilty on the narcotics charges, but could not because the plea was conditioned on his also pleading guilty to an unrelated robbery charge. The petitioner maintained his innocence on the robbery charge, which were later dismissed. In this regard, the petitioner's attorney sought to persuade the Court to impose a lenient sentence, even though the petitioner pursued a trial in the face of admittedly

strong evidence against him. The Court concludes that this conduct does not support a claim for ineffective assistance of counsel.

■ The petitioner does not appear to have been prejudiced in any way by his or his attorneys comments at sentencing. The prosecution recommended a prison term of twelve-and-a-half to twenty-five years in prison. The Court sentenced the petitioner to four concurrent, indeterminate terms of six to twelve years. The Court cannot say that, had the petitioner's lawyer not admitted the petitioner's prior involvement with narcotics, that the sentencing judge would have imposed a sentence any more lenient than he did. Accordingly, the petitioner's ineffective assistance claim based on his attorney's performance at sentencing is denied.

### D. As to Due Process

■ "A jury charge in a state trial is normally a matter of state law and is not reviewable on federal habeas corpus [grounds] absent a showing that the alleged errors were so serious as to deprive [the] defendant of a federal constitutional right." *United States ex rel. Smith v. Montanye*, 505 F.2d 1355, 1359 (2d Cir. 1974) (citations omitted). As a result, "[i]n order to obtain a writ of habeas corpus in federal court on the ground of error in a state court's instructions to the jury on matters of state law, the petitioner must show not only that the instruction misstated state law but also that the error violated a right guaranteed to him by federal law." *Casillas v. Scully*, 769 F.2d 60, 63 (2d Cir.1985).

It is well-settled that "not every ambiguity, inconsistency, or deficiency in a jury instruction rises to the level of a due process violation," *Middleton v. McNeil*, 541 U.S. 433, 437, 124 S.Ct. 1830, 158 L.Ed.2d 701 (2004) (per curiam). A court confront-

ed with the issue must determine "whether the ailing instruction ... so infected the entire trial that the resulting conviction violates due process." *Id.* (quoting *Estelle v. McGuire,* 502 U.S. 62, 72, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991)) (additional citations and internal quotation marks omitted). The United States Supreme Court has stated that "a single instruction to a jury may not be judged in artificial isolation, but must be viewed in [conjunction with] the overall charge." *Boyde v. California,* 494 U.S. 370, 378, 110 S.Ct. 1190, 108 L.Ed.2d 316 (1990) (quoting *Cupp v. Naughten,* 414 U.S. 141, 146–147, 94 S.Ct. 396, 38 L.Ed.2d 368 (1973)). In the event that a court reviewing the jury instruction finds that the charge is ambiguous, the Supreme Court has concluded that "the question is whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way that violates the Constitution." *Middleton,* 541 U.S. at 437, 124 S.Ct. 1830 (citations omitted).

■ The trial court identified the petitioner as one of the voices on the recordings admitted into evidence at the trial. However, the trial court also instructed the jury that it was their duty to decide the facts, especially with regard to Detective Sheehan's credibility and identification of the petitioner's voice on the tape. The trial court reiterated the following to the jurors: "it will be for you and you, alone, to determine what was said and who said it, and you must make such determinations from what you hear on the tape recordings and not from what you read from the typewritten transcripts."

On appeal, the Appellate Division found the petitioner's claim that this instruction was error to be "without merit." Here, the petitioner failed to establish how the appellate court's finding that the petitioner's argument regarding the jury charge was without merit was based on an unrea-

sonable application of clearly established Federal law." *See Brisco v. Phillips,* 376 F.Supp.2d 306, 311 (E.D.N.Y.2005).

Furthermore, there was overwhelming evidence of the petitioner's guilt presented at the trial. Specifically, the State established that the police recovered the prerecorded currency from the petitioner; the vehicle identified at the scene of the transactions was registered to the defendant; the petitioner was viewed on two consecutive nights in close proximity by an experience narcotics detective; and the petitioner was identified by Detective Sheehan at the police station approximately one and half hours after the second transaction.

Viewing the charge as a whole, and the overwhelming evidence of the petitioner's guilt, the Court sees no reason to disturb the decision of the Appellate Division. Accordingly, the petitioner's due process claim relating to the jury charge is denied.

**E. As to Confirmatory Identifications**

■ In general, "[w]hen [a] defendant objects to identification testimony to be given by a witness who has identified him prior to trial, a sequential inquiry is required in order to determine whether ... the prior identification ... is admissible." *Raheem v. Kelly,* 257 F.3d 122, 133 (2d Cir.2001); *see also* N .Y.Crim. Pro. L. §§ 710.20(6); 710.60(3). In *United States v. Wade,* the United States Supreme Court held that the Sixth Amendment requires the trial court to ascertain prior to trial whether a witness's identification testimony is tainted by an improper identification. 388 U.S. 218, 236, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1966). However, such an inquiry is unnecessary where the defendant and witness are "known to one another." In such a case, the identification is merely "confirmatory." *See People v.*

352

*Rodriguez,* 79 N.Y.2d 445, 453, 583 N.Y.S.2d 814, 593 N.E.2d 268 (1992).

In this regard, the Court of Appeals of the State of New York has recognized that a nearly contemporaneous station house "identification ... made by a trained undercover officer who observed the defendant during [a] face-to-face drug transaction knowing [that the] defendant [will be arrested] shortly" is valid, and does not warrant a hearing under *Wade. People v. Wharton,* 74 N.Y.2d 921, 922, 550 N.Y.S.2d 260, 549 N.E.2d 462 (1989). This principle is premised upon the belief that the officer is "experienced and expect[s] to observe carefully the defendant for purposes of later identification and for completion of his official duties." *Id.* at 923, 550 N.Y.S.2d 260, 549 N.E.2d 462 (citing *People v. Morales,* 37 N.Y.2d 262, 271, 372 N.Y.S.2d 25, 333 N.E.2d 339 (1975)).

In September 1999, Detective Sheehan was an eleven-year veteran of the Suffolk County Police Department with four years of experience investigating narcotics offenses. With assistance from a confidential informant, he made arrangements to purchase crack cocaine from the petitioner, and consummated that transaction on August 31, 1999. Detective Sheehan made plans to purchase additional crack cocaine from the petitioner on September 1, 1999, and was informed that his investigation could not continue beyond that evening. Knowing this, Detective Sheehan arranged for officers to be available to make an arrest, and closely observed the person he purchased the drugs from in anticipation of having to identify the seller later that night. Detective Sheehan testified that he got a "close look" at the person from whom he purchased the drugs. Less than two hours after the second transaction, Detective Sheehan identified the petitioner as the person from whom he purchased crack cocaine on August 31, 1999 and September 1, 1999. This nearly contemporaneous station-house identification by a trained officer is sufficient to satisfy the standards of *People v. Wharton,* 74 N.Y.2d 921, 922, 550 N.Y.S.2d 260, 549 N.E.2d 462 (1989). Accordingly, the petitioner's claim that he is entitled to habeas relief because of the trial court's failure to conduct a *Wade* hearing is denied.

### III. CONCLUSION

For the reasons stated above, John Carter's petition for a writ of habeas corpus is DENIED. Pursuant to Rule 22(b) of the Federal Rules of Appellate Procedure and 28 U.S.C. § 2253(c)(2), a certificate of appealability is DENIED, as the petitioner failed to make a substantial showing of a denial of a constitutional right. *Miller–El v. Cockrell,* 537 U.S. 322, 336, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003).

The Clerk of the Court is directed to close this case.

**SO ORDERED.**