**Edwin GODFREY, Petitioner,**

v.

**Frank IRVIN, Superintendent, Respondent.**

No. 93–CV–638A.

United States District Court, W.D. New York.

Dec. 7, 1994.

Edwin Godfrey, pro se.

Thomas H. Brandt, Lockport, NY, for respondent.

### ORDER

ARCARA, District Judge.

The above-referenced case was referred to Magistrate Judge Carol E. Heckman, pursuant to 28 U.S.C. § 636(b)(1)(B) on January 25, 1994. On October 24, 1994, Magistrate Judge Heckman filed a Report and Recommendation recommending that the petition be denied, the case be dismissed and petitioner's request for appointment of counsel be denied.

The Court having carefully reviewed the Report and Recommendation, as well as the record in this case together with the pleadings and materials submitted by the parties; and no objections having been timely filed, it is hereby

ORDERED, that pursuant to 28 U.S.C. § 636(b)(1), and for the reasons set forth in Magistrate Judge Heckman's Report and Recommendation, petitioner's request for appointment of counsel is denied, the petition is denied, and the case dismissed in its entirety.

IT IS SO ORDERED.

### REPORT AND RECOMMENDATION AND ORDER

HECKMAN, United States Magistrate Judge.

This petition for habeas corpus under 28 U.S.C. § 2254 has been referred to the undersigned by Hon. Richard J. Arcara to hear and report pursuant to 28 U.S.C. § 636(b)(1)(B). For the following reasons, it is recommended that the petition be denied.

Plaintiff has also applied for appointment of counsel. Based on the standards for appointment of counsel in civil cases as set forth in *Cooper v. A. Sargenti Co., Inc.*, 877 F.2d 170 (2d Cir.1989), and *Hodge v. Police Officers*, 802 F.2d 58 (2d Cir.1986), and pursuant to Rule 8(c) of the Rules Governing Section 2254 Cases in the United States District Courts, plaintiff's application is denied.

### *BACKGROUND*

The following facts are undisputed. At about 9:00 p.m. on October 11, 1982, petitioner and his friends Rodney Marsh and Willie Marsh went to petitioner's home at 1515 Michigan Avenue in the City of Niagara Falls, New York. They drank two quarts of beer and left. They went to a Wilson Farms store in the Highland Avenue area of Niagara Falls, where petitioner bought another quart of beer. After drinking the beer, the three men went to a liquor store where petitioner and Rodney Marsh bought some wine and some brandy. They returned to the Wilson Farms store. While standing outside the store, they were joined by a fourth man, Terry Crittenden, who bought another quart of beer. The four men stood outside the Wilson Farms store for approximately one hour, drinking the beer, wine and brandy. All except for petitioner were also smoking marijuana.

The men then went to a nearby bar. Rodney Marsh and Terry Crittenden began shadow boxing outside the bar, and Marsh told Crittenden that he was going to "punch him out." Petitioner told Marsh not to do it, and Marsh and petitioner began to argue. Marsh told petitioner that he could kill him. Petitioner told Marsh that if he ever came near him with a gun, he would have no choice but to shoot him. He referred to an incident several weeks earlier at the same bar during which Marsh had aimed a gun at petitioner and pulled the trigger, but the gun had jammed. Marsh suggested that they go to petitioner's house so that he could "kick his ass."

Petitioner and Rodney Marsh then took a cab to petitioner's house at 1515 Michigan Avenue. As they entered the house, Marsh told petitioner to go and get his gun. Petitioner went to the bedroom and retrieved the gun from the closet. Marsh entered the bedroom and petitioner pointed the gun at Marsh. Marsh attacked petitioner, and they scuffled. Petitioner threw the gun to the floor. He eventually freed himself, and picked up the gun. Marsh then grabbed petitioner from behind, and he again threw the gun down. They wrestled from the bedroom into the dining room and then into the living room.

When they were through wrestling, they sat on the couch in the living room. They continued to argue about which man could beat up the other. After sitting for a minute, petitioner retrieved the gun and began unloading it while still arguing with Marsh. Petitioner finally told Marsh to get out of his house. Marsh refused to leave, and came toward petitioner. Marsh said, "you got your gun, use it. If you don't I will." Marsh then tried to take the gun from petitioner but petitioner pushed him away. When Marsh came toward him again, petitioner shot him four times. Petitioner then called 911. Police arrived on the scene shortly thereafter, and arrested petitioner.

Petitioner was indicted for second degree murder under N.Y.Penal Law § 125.25(1). At his trial, which took place on June 6–14, 1983 before Niagara County Judge Charles J. Hannigan, petitioner raised the defense of justification. On June 14, 1983, the jury found petitioner guilty of second degree murder. He was sentenced to an indeterminate sentence of twenty years to life (Item 1).

Petitioner appealed his conviction to the Appellate Division, Fourth Department. He raised the following claims on appeal:

1. The trial judge improperly charged the jury on the justification defense by (a) using hypothetical examples and negative language to suggest that the defense was unwarranted under the circumstances (Item 4, Ex. A, Point I), (b) providing confusing and inconsistent instructions on the standard for evaluating the reasonableness of the defendant's conduct (*id.*, Point II), and (c) refusing to charge "defense of premises" (*id.*, Point V);

2. The trial judge improperly allowed cross-examination of petitioner concerning his prior convictions for assault and burglary (*id.*, Point III);

3. The deficiency of the record on appeal (*id.*, Point IV);

4. Prosecutorial misconduct (*id.*, Point VI); and,

5. Failure to properly charge the jury on the standard for assessing the credibility of police officers (*id.*, Point VII).

On March 8, 1991, the Fourth Department reversed petitioner's conviction and granted him a new trial, finding that the trial court should have instructed the jury on the defense of justification for the use of deadly force to prevent the commission of a burglary under N.Y. Penal Law § 35.20(3). *People v. Godfrey*, 171 A.D.2d 1007, 1007–08, 569 N.Y.S.2d 852, 853 (4th Dept.1991). Two justices dissented.

On July 2, 1992, the New York Court of Appeals unanimously reversed the Fourth Department's grant of a new trial. *People v. Godfrey*, 80 N.Y.2d 860, 587 N.Y.S.2d 594, 600 N.E.2d 225 (1992). The court found that the trial court properly refused to instruct the jury on the justifiable use of deadly force to terminate the commission of a burglary because petitioner had invited Rodney Marsh into his home fully aware that he intended to commit a crime once inside. *Id.* at 861–62.

On August 3, 1993, while incarcerated at the Wende Correctional Facility, petitioner

filed this application for a writ of habeas corpus under 28 U.S.C. § 2254. He asserts the same grounds for habeas corpus relief as he asserted in his state court appeal from his conviction. Each of these claims is discussed in turn below.[1]

### DISCUSSION

### I. Jury Charge on Justification Defense.

Petitioner claims that the trial judge's instructions to the jury regarding the standards for evaluating the defense of justification were improper, resulting in the denial of a fair trial.

■ As a general matter, a jury charge in a state trial is a matter of state law and is not reviewable in a federal habeas corpus proceeding absent a showing that the alleged errors were so serious as to deprive the petitioner of the constitutional right to due process. *United States ex rel. Smith v. Montanye*, 505 F.2d 1355, 1359 (2d Cir.1974), *cert. denied*, 423 U.S. 856, 96 S.Ct. 106, 46 L.Ed.2d 81 (1975). Thus, "[i]n order to obtain a writ of habeas corpus in federal court on the ground of error in a state court's instruction to the jury on matters of state law, the petitioner must show not only that the instruction misstated state law but also that the error violated a right guaranteed to him by federal law." *Casillas v. Scully*, 769 F.2d 60, 63 (2d Cir.1985); *see Cupp v. Naughten*, 414 U.S. 141, 146, 94 S.Ct. 396, 400, 38 L.Ed.2d 368 (1973).

■ The standard for a federal district court reviewing a state court's proceedings on a habeas corpus petition is "quite different" from the standard required of the federal appellate courts on direct review of proceedings in a federal criminal case. *Rogers v. Carver*, 833 F.2d 379, 381 (1st Cir.1987), *cert. denied*, 485 U.S. 937, 108 S.Ct. 1116, 99 L.Ed.2d 276 (1988). The habeas petitioner must show that "the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process ...," *Cupp v. Naughten, supra*, 414 U.S. at 147, 94 S.Ct. at 400, not merely that "the

instruction is undesirable, erroneous, or even 'universally condemned....'" *Id.* at 146, 94 S.Ct. at 400; *Morales v. Keane*, No. 92 Civ. 8189, 1994 WL 38668, at *3–*4 (S.D.N.Y. 1994). The challenged instruction "may not be judged in artificial isolation, but must be viewed in the context of the overall charge" by the reviewing court. *Cupp v. Naughten, supra*, 414 U.S. at 147, 94 S.Ct. at 400.

■ New York's statutory defense of justification, set forth at length in Article 35 of the Penal Law, provides that a person may use deadly physical force in self defense, under appropriate circumstances. *People v. Goetz*, 68 N.Y.2d 96, 105, 107, 506 N.Y.S.2d 18, 497 N.E.2d 41 (1986). The provisions relevant to this case are as follows:

> **§ 35.15 Justification; use of physical force in defense of a person**
>
> 1. A person may, subject to the provisions of subdivision two, use physical force upon another person when and to the extent he reasonably believes such to be necessary to defend himself or a third person from what he reasonably believes to be the use or imminent use of unlawful physical force by such other person, unless:
>
> (a) The latter's conduct was provoked by the actor himself with intent to cause physical injury to another person; or
>
> (b) The actor was the initial aggressor; except that in such case his use of physical force is nevertheless justifiable if he has withdrawn from the encounter and effectively communicated such withdrawal to such other person but the latter insists in continuing the incident by the use or threatened imminent use of unlawful physical force; or
>
> (c) The physical force involved is the product of a combat by agreement not specifically authorized by law.
>
> 2. A person may not use deadly physical force upon another person under circumstances specified in subdivision one unless:

---

1. Respondent has not submitted a memorandum of law addressing petitioner's claims, despite this court's order to do so. Rather, respondent relies on the discussion of those claims in his appellate brief, submitted as Exhibit B to his answer to the petition.

(a) He reasonably believes that such other person is using or about to use deadly physical force. Even in such case, however, the actor may not use deadly physical force if he knows that he can with complete safety as to himself and others avoid the necessity of doing so by retreating; except that he is under no duty to retreat if he is:

(i) in his dwelling place and not the initial aggressor....

N.Y. Penal Law § 35.15.

■ In this case, petitioner claims that the trial judge's use of hypotheticals and negative language in explaining the justification defense improperly suggested to the jury that the defense was unwarranted. However, my review of the judge's extensive justification instruction, in the context of the overall charge, indicates that the jury was properly instructed on the language and application of the justification defense as defined in Article 35 of the New York Penal Law (T. 741–62).[2] The judge repeated the statutory language several times, either reading verbatim or paraphrasing the pertinent sections of Article 35, and used examples to illustrate how that language might be applied to various situations. Upon the jury's request, the judge also repeated the statutory requirements for justified use of deadly physical force (T. 768–78). Neither the language nor the examples were impermissibly negative or otherwise suggestive of petitioner's guilt. Viewing the judge's instruction on justification as a whole in the context of the entire charge, and in light of the statutory language of Article 35, there is nothing in the record to suggest that the instruction either misstated the law or so infected the entire proceeding as to result in a denial of due process.

Petitioner also claims that the justification charge confused the standard for evaluating the "reasonableness" of his conduct, as set forth in *People v. Goetz, supra.* In *Goetz,* the lower courts had dismissed the charges against the defendant because the prosecutor had instructed the grand jury that, when

determining whether the defendant's use of deadly force was reasonable, they were to consider the circumstances of the incident and determine "whether the defendant's conduct was that of a reasonable man in the defendant's situation." *Id.,* 68 N.Y.2d at 106, 506 N.Y.S.2d 18, 497 N.E.2d 41. According to the lower courts, because § 35.15 uses the term "he reasonably believes," the appropriate test is whether the defendant's beliefs and reactions were "reasonable to him." *Id.*

■ The Court of Appeals reversed and reinstated the charges. According to the Court:

Under [the lower courts'] reading of the statute, a jury which believed a defendant's testimony that he felt that his own actions were warranted and were reasonable would have to acquit him, regardless of what anyone else in defendant's situation might have concluded. Such an interpretation defies ordinary meaning and significance of the term "reasonably" in a statute, and misconstrues the clear intent of the Legislature, in enacting section 35.15, to retain an objective element as part of any provision authorizing the use of deadly force.

*Id.* Thus, the jury should be instructed to consider the reasonableness of the defendant's beliefs based on the circumstances facing the defendant or his or her situation, including any relevant knowledge the defendant had about the potential assailant, the physical attributes of all persons involved (including the defendant), and any prior experiences the defendant had "which could provide a reasonable basis for a belief that another person's intentions were to injure or rob him or that the use of deadly force was necessary under the circumstances." *Id.* at 114, 506 N.Y.S.2d 18, 497 N.E.2d 41.

■ In this case, the judge instructed that jury that they should "consider what was the situation, who were the people involved, what was the threat, how serious was it" (T. 749). He explained that, in determining what was reasonable under the circumstances:

2. Numerical references preceded by "T." refer to pages of the transcript of petitioner's trial on

June 6–14, 1983.

[Y]ou take into consideration the people involved, who were they, what were they like, aggressive, rational, young, old, male, female, what were the circumstances, where were they, what was said, how did it happen, and from those circumstances you have to decide what was reasonable.... The person must not only believe he is in danger, but must in fact have reasonable grounds for that belief. The question is not merely what did the Defendant believe, but what did he have the right to believe.

(T. 756–58). At no time during the charge did the judge tell the jury that the appropriate test for assessing the reasonableness of the defendant's conduct in using deadly force was whether his beliefs and reactions were "reasonable to him." The jury was therefore properly instructed on the standard for evaluating the reasonableness of defendant's conduct under *People v. Goetz* and Article 35 of the Penal Law.

Finally, with respect to the charge on justification, petitioner claims that the trial judge committed constitutional error by refusing to instruct the jury on "defense of premises." Article 35 provides:

A person in possession or control of, or licensed or privileged to be in, a dwelling or an occupied building, who reasonably believes that another person is committing or attempting to commit a burglary of such dwelling or building, may use deadly physical force upon such other person when he reasonably believes such to be necessary to prevent or terminate the commission or attempted commission of such burglary.

N.Y.Penal Law § 35.20(3). In reversing the judgment of conviction, the Appellate Division found that there was a reasonable view of the evidence by which the jury could find that petitioner reasonably believed that Rodney Marsh was committing or attempting to commit the crime of assault after his license to be on petitioner's premises was revoked, and that petitioner reasonably believed that the use of deadly physical force was necessary to terminate the assault. *People v. Godfrey, supra,* 171 A.D.2d at 1007–08, 569 N.Y.S.2d at 853.

However, the Court of Appeals found that the trial judge properly refused to charge the jury on defense of premises under § 35.20(3), and reversed the Appellate Division. According to the Court of Appeals, nothing in § 35.20(3) or its legislative history suggested that it was meant to protect a person (such as petitioner) who "invites another person into his home, fully aware that such person intends to commit a crime once inside. Such an individual is no less responsible for any ensuing invasion of his or her own security than the would-be burglar, and therefore cannot claim the protection of section 35.20(3)." *People v. Godfrey, supra,* 80 N.Y.2d at 862, 587 N.Y.S.2d 594, 600 N.E.2d 225.

Accordingly, under New York law as interpreted by the highest court of the state, petitioner was not entitled to a jury charge on defense of premises. The trial judge's refusal to charge defense of premises therefore did not violate petitioner's due process rights.

## II. Evidence of Other Convictions.

Petitioner claims that he was denied a fair trial because the trial judge improperly allowed cross-examination concerning his prior felony convictions. This claim is also without merit.

The admission of other crimes evidence does not deprive a habeas corpus petitioner of due process if it is relevant and admissible for an appropriate purpose under state law and not simply offered to prove bad character and propensity to commit crimes. *Spencer v. Texas,* 385 U.S. 554, 87 S.Ct. 648, 17 L.Ed.2d 606 (1967); *Mokone v. Kelly,* 680 F.Supp. 679, 682 (S.D.N.Y.1988). In this case, the record is clear that the prosecution's cross-examination of petitioner was allowed by the trial judge only for the purpose of impeaching petitioner's credibility (T. 517–26), a proper purpose under state law. *See People v. Sandoval,* 34 N.Y.2d 371, 377, 357 N.Y.S.2d 849, 314 N.E.2d 413 (1974); *People v. Rivera,* 101 A.D.2d 981, 982, 477 N.Y.S.2d 732 (3rd Dept.1984), *aff'd,* 65 N.Y.2d 661, 491 N.Y.S.2d 621, 481 N.E.2d 253 (1985). In addition, the judge gave the jury a proper limiting instruction on the purpose of other crimes evidence (T. 730).

Accordingly, the trial judge's allowance of evidence of petitioner's prior convictions for the purpose of impeaching his credibility did not deny petitioner his constitutional right to a fair trial.

## III. Prosecutorial Misconduct.

Petitioner claims that the trial judge erred by denying his motion to dismiss the indictment based on alleged prosecutorial misconduct. He claims that the prosecution intimidated a material witness in the case, Pamela Dye, by telling her during a pretrial interview that she should not talk to defense counsel.

■ The Second Circuit has set forth a three-factor test to be applied on habeas corpus review in determining whether a prosecutor's conduct substantially prejudiced the petitioner's right to a fair trial. Those factors include the severity of the misconduct, the measures adopted to cure the misconduct, and the certainty of conviction absent the improper conduct. *Garofolo v. Coomb,* 804 F.2d 201, 206 (2d Cir.1986); *United States v. Modica,* 663 F.2d 1173, 1181 (2d Cir.1981) (per curiam), *cert. denied,* 456 U.S. 989, 102 S.Ct. 2269, 73 L.Ed.2d 1284 (1982).

■ In this case, the only evidence of witness intimidation is contained in defense counsel's remarks to the court prior to the witness's testimony at trial, during which counsel made the motion to dismiss the indictment (T. 334–38). On the other hand, the record is clear that defense counsel did in fact talk to the witness before trial, and was able to discuss all of the matters he wanted to explore (T. 338–39). Ms. Dye testified as a prosecution witness at the trial, and defense counsel cross-examined her at length. She was not asked any questions about the alleged intimidation by the prosecution. She testified that she was present at the scene of the shooting on the night of October 11–12, 1982, and described the circumstances of the

encounter between petitioner and Rodney Marsh. She left the residence during the encounter, and was not an eyewitness to the actual shooting (T. 341–98).

Accordingly, due to the lack of evidence regarding the severity of the alleged misconduct, the fact that defense counsel had the opportunity to interview the witness before trial and cross-examine her at trial, and the abundance of evidence of petitioner's guilt, I find that petitioner's right to a fair trial was not substantially prejudiced by any prosecutorial misconduct that might have occurred.

## IV. Incomplete Transcript.

■ Petitioner claims that his due process rights were violated because the transcript of the trial presented in the record on appeal was incomplete. In his appellate brief, petitioner stated that his rights were violated because there was a gap in the trial transcript precluding appellate review of his cross-examination by the prosecution about his prior convictions, and that there was no record at all of the content of a tape recording of his 911 call, which was played to the jury during trial and during deliberations.[3]

■ In order to demonstrate denial of a fair appeal, petitioner must show prejudice resulting from the missing or incomplete transcript. *Bransford v. Brown,* 806 F.2d 83, 86 (6th Cir.1986), *cert. denied,* 481 U.S. 1056, 107 S.Ct. 2198, 95 L.Ed.2d 853 (1987); *United States ex rel. Cadogan v. LaVallee,* 428 F.2d 165, 168 (2d Cir.1970), *cert. denied,* 401 U.S. 914, 91 S.Ct. 887, 27 L.Ed.2d 813 (1971). Speculation that the missing portions of the transcript reflect reversible error is not enough. Instead, petitioner must present "some modicum of evidence [to] support such a conclusion." *Bransford, supra.*

■ Petitioner has not met his burden in this case. The record is clear that the full transcript of the trial was presented to the state appellate courts (*see* Item 4, Ex. B, pp.

---

3. In his answer to the petition, respondent asserted that this claim was not exhausted (Item 4, p. 2). However, in response to this court's February 14, 1994 briefing order, respondent stated that this claim was "fully and adequately addressed" on appeal (Item 9, p. 1). Therefore, respondent's exhaustion defense has been waived. *See Plunkett v. Johnson,* 828 F.2d 954, 956 (2d Cir.1987) (district court may reach merits where exhaustion defense has been waived and court is convinced that claim lacks merit).

14, A–7), and petitioner has not produced any evidence, other than "gross speculation," *Bransford v. Brown, supra,* to support his claim that the content of the tape recording of his 911 call reflected reversible error.

Accordingly, petitioner's due process right to a fair appeal has not been denied by an incomplete transcript of the proceedings at his trial.

## V. Failure to Instruct the Jury on Standards for Assessing Credibility of Police Officers.

Finally, petitioner claims that he was denied a fair trial by the trial judge's failure to instruct the jury on the proper standards for assessing the credibility of police officers.

■ Where the trial judge has adequately instructed the jury on the general rules for assessing the credibility of witnesses, and where the petitioner's testimony has not been singled out for special scrutiny, a specific jury charge regarding the credibility of police witnesses is not necessary. *Ramos v. Keane,* No. 92 Civ. 9111, 1994 WL 97080, at *4 (S.D.N.Y.1994); *Thomas v. Fulcomer,* No. 89 Civ. 1431, 1989 WL 60447, at *6 (E.D.Pa. 1989); *People v. Miller,* 159 A.D.2d 224, 552 N.Y.S.2d 28 (1st Dept.), *appeal denied,* 76 N.Y.2d 739, 558 N.Y.S.2d 901, 557 N.E.2d 1197 (1990).

■ In this case, the trial judge fully instructed the jury on the standards for assessing the credibility of "every witness who appeared" at trial, including consideration of "whether there is any interest or prejudice" (T. 727–30). Petitioner's testimony was not improperly singled out since the judge also instructed the jury to consider the credibility of petitioner's testimony "as they would any other witness who appears before them" (T. 732). The jury was therefore properly instructed on the standards for evaluating the credibility of all of the witnesses who testified, and the omission of a specific charge on the consideration of police witness testimony did not "so infect[ ] the entire trial that the resulting conviction violate[d] due process." *Cupp v. Naughten, supra,* 414 U.S. at 147, 94 S.Ct. at 400.

## CONCLUSION

For the foregoing reasons, it is recommended that the petition be denied, and the case dismissed. Petitioner's request for appointment of counsel is denied.

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby

**ORDERED,** that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of this Court within ten (10) days after receipt of a copy of this Report and Recommendation in accordance with the above statute, Fed.R.Civ.P. 72(b) and Local Rule 30(a)(3).

The district court will ordinarily refuse to consider on *de novo* review arguments, case law and/or evidentiary material which could have been, but was not, presented to the magistrate judge in the first instance. *See, e.g., Paterson–Leitch Co., Inc. v. Massachusetts Municipal Wholesale Electric Co.,* 840 F.2d 985 (1st Cir.1988).

*Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order. Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Wesolek, et al. v. Canadair Ltd., et al.,* 838 F.2d 55 (2d Cir.1988).

The parties are reminded that, pursuant to Rule 30(a)(3) of the Local Rules for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." ***Failure to comply with the provisions of Rule 30(a)(3), or with the similar provisions of Rule 30(a)(2) (concerning objections to a Magistrate Judge's Decision and Order), may result in the District Court's refusal to consider the objection.***

Let the Clerk send a copy of this Order and a copy of the Report and Recommendation to the attorneys for the government and the defendant.

SO ORDERED:

DATED: Buffalo, New York
October 24, 1994