Joseph Richard PAWLOWSKI, Petitioner,

v.

Walter R. KELLY, Superintendent, Attica
Correctional Facility, Respondent.

No. 89–CV–1443A.

United States District Court,
W.D. New York.

Sept. 11, 1995.

Joseph Richard Pawlowski, pro se.

James Arnone, Buffalo, for Kelly.

## ORDER

ARCARA, District Judge.

The above-referenced case was referred to Magistrate Judge Carol E. Heckman, pursuant to 28 U.S.C. § 636(b)(1)(B), on March 14, 1995. On August 9, 1995, Magistrate Judge Heckman filed a Report and Recommendation recommending that petitioner's petition for habeas corpus be denied and the case dismissed.

The Court having carefully reviewed the Report and Recommendation, the record in this case, as well as the pleadings and materials submitted by the parties; and no objections having been timely filed, it is hereby

ORDERED, that pursuant to 28 U.S.C. § 636(b)(1), and for the reasons set forth in Magistrate Judge Heckman's Report and Recommendation, petitioner's habeas corpus petition is denied and the case is dismissed in its entirety.

For the reasons stated in Magistrate Judge Heckman's Report and Recommendation, the Court finds that this petition presents no question worthy of appellate review and, accordingly, denies a certificate of probable cause. *Rodriquez v. Scully,* 905 F.2d 24 (2d Cir.1990).

IT IS SO ORDERED.

## REPORT AND RECOMMENDATION

HECKMAN, United States Magistrate Judge.

This habeas corpus petition was referred to the undersigned by the Hon. Richard J. Arcara, to hear and report, in accordance with 28 U.S.C. § 636(b). For the reasons set forth below, it is recommended that the petition be denied.

## BACKGROUND

Petitioner was originally indicted in December of 1974. The first trial was held in July of 1975, and resulted in a hung jury. During the preliminary stages of the second trial, petitioner requested that he represent himself with the help of a court-appointed advisor. The trial court advised petitioner of his rights and the consequences of proceeding *pro se,* but petitioner on numerous times insisted on representing himself.

The second trial began in October of 1975. On November 8, 1975, the petitioner was found guilty of 1) intentional murder; 2) felony murder; 3) robbery, first degree; 4) illegal possession of a loaded weapon; and 5) illegal possession of a weapon. Petitioner was sentenced on December 10, 1975. The Appellate Division, Fourth Department affirmed the judgment of conviction on January 24, 1986. *People v. Pawlowski,* 116 A.D.2d 985, 498 N.Y.S.2d 711 (4th Dept. 1986). Leave to appeal to the Court of Appeals was denied on April 17, 1986. 67 N.Y.2d 948, 502 N.Y.S.2d 1041, 494 N.E.2d 126.

The trial testimony showed that on January 16, 1974 at about 10:00 PM, Deputy Sheriff Paul Keister found the body of William Balkwill in the Minute Man gas station in Batavia, New York (T. 38–52). The County Coroner pronounced the victim dead at 10:47 PM and gave his opinion that the victim had died within the previous hour (T. 162). The cause of death was a bullet, shot at very close range (T. 155–162).

Steve Davis testified that he worked across the street from the gas station. On the night in question, he had quit work at about 10:00 PM and that he had seen a white station wagon leave the gas station about fifteen minutes before he had quit (T. 97–99). The victim's mother testified that she had seen her son at the gas station alive at about 9:30 PM on the 16th (T. 258).

Nancy Washburn testified that she and the petitioner were engaged. On the evening of January 16th, petitioner had left her house at

about 9:30 PM and taken her white station wagon (T. 269, 278–79).

Investigator Gary Maha testified that the police found a handgun holster in the white station wagon. A search of petitioner's parents' residence revealed nine spent .32 caliber bullets and six empty .32 caliber cartridge casings behind the barn (T. 414, 427). Petitioner's co-worker, Lawrence Gaddis, also testified that defendant purchased a .32 caliber Harrington and Richardson pistol from him (T. 1029–31). The firearms expert testified that the bullet that killed the victim was from a .32 caliber pistol, most likely fired from a handgun manufactured by Harrington and Richardson (T. 1421, 1423, 1432). The expert also testified that the bullets and empty cartridge casings were from a .32 caliber Harrington and Richardson revolver (T. 1435, 1552).

Petitioner's roommate and accomplice, Kenneth Stankiewicz, testified about petitioner's ownership of a .32 caliber revolver (T. 638–642) and the robbery of the Minute Man gas station (T. 653–661).

Homer Causer, a cellmate of petitioner at Genesee County Jail, testified that petitioner had told him about the robbery and murder and that he requested Causer to "stick a cheve" in Stankiewicz (T. 1452–53).

After all the evidence was in, the petitioner and prosecution made their closing arguments (T. 1918–2139) and the trial judge gave initial and supplemental jury instructions (T. 2140–2277).

On October 26, 1989, while incarcerated at Attica Correctional Facility, petitioner filed the instant petition pro se under 28 U.S.C. § 2254, asserting seven different grounds for habeas corpus relief. Respondent filed his answer to the petition on September 18, 1990.

■ There are exhaustion and procedural defect issues as to some or all of the claims that petitioner has raised. However, since respondent failed to raise these defenses in his answer, they are deemed waived. *Plunkett v. Johnson*, 828 F.2d 954 (2d Cir.1987); *Godfrey v. Irvin*, 871 F.Supp. 577, 584 n. 3 (W.D.N.Y.1994).

The petitioner has raised the following claims:

1) double jeopardy,

2) denial of right to counsel,

3) prosecutorial misconduct,

4) due process violations by the trial court in marshaling the evidence and in incorrectly charging the jury,

5) error of trial court in failing to limit questioning regarding his prior convictions,

6) error of trial court in permitting the recall of a prosecution witness, and

7) error of trial court in failing to declare a mistrial.

Each of these claims is discussed in turn below.

## DISCUSSION

### I. Double Jeopardy

The petitioner argues that after there was a hung jury in the first trial, the court should have granted his motion for an order of dismissal based on insufficient evidence. Consequently, he contends that the denial of the motion led to his conviction at the second trial which raises a Double Jeopardy issue.

■ The Double Jeopardy Clause of the Fifth Amendment protects a criminal defendant from repeated prosecutions for the same offense. *Oregon v. Kennedy*, 456 U.S. 667, 102 S.Ct. 2083, 72 L.Ed.2d 416 (1982); *United States v. Dinitz*, 424 U.S. 600, 96 S.Ct. 1075, 47 L.Ed.2d 267 (1976). As part of this protection, the clause affords the defendant a "valued right to have his trial completed by a particular tribunal." *Wade v. Hunter*, 336 U.S. 684, 689, 69 S.Ct. 834, 837, 93 L.Ed. 974 (1949).

■ It is well-established that the "constitutional immunity from double jeopardy is a personal right which, if not affirmatively pleaded by the defendant at the time of trial, will be regarded as waived." *Paul v. Henderson*, 698 F.2d 589, 592 (2d Cir.), *cert. denied*, 464 U.S. 835, 104 S.Ct. 120, 78 L.Ed.2d 118 (1983) (quoting *United States v. Perez*, 565 F.2d 1227, 1232 (2d Cir.1977)). In *Henderson*, the defendant failed to present his double jeopardy claim to the trial court

before the second trial. The Second Circuit held that the defendant had waived his right and that he could not be "heard to complain now that his right has been abridged." *Id.*

In this case, there is no indication in the record that the defendant asserted his double jeopardy claim before he was subjected to the second trial. The defendant cites *Menna v. New York*, 423 U.S. 61, 96 S.Ct. 241, 46 L.Ed.2d 195 (1975) as authority. However, *Menna* is not controlling as the defendant in that case had timely asserted his double jeopardy claim prior to the second trial.

■ Even assuming that petitioner has not waived his claim to double jeopardy, his argument must fail. Regardless of the sufficiency of the evidence at the first trial, petitioner has no valid double jeopardy claim. It is clear that retrial following a hung jury does not constitute double jeopardy. *Richardson v. United States*, 468 U.S. 317, 325, 104 S.Ct. 3081, 3086, 82 L.Ed.2d 242 (1984).

Accordingly, petitioner is not entitled to habeas corpus relief on this ground.

## II. Waiver of Right to Counsel

Petitioner claims that the trial court failed to conduct a searching inquiry to determine if petitioner had knowingly and voluntarily relinquished his right to be represented by counsel.

■ Under the Sixth Amendment, a defendant has the right to represent himself. *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). A defendant may proceed *pro se* if he "knowingly, voluntarily, and unequivocally" waives his right to appointed counsel. *Williams v. Bartlett*, 44 F.3d 95, 99 (2d Cir.1994); *Johnstone v. Kelly*, 808 F.2d 214, 216 (2d Cir.1986), *cert. denied*, 482 U.S. 928, 107 S.Ct. 3212, 96 L.Ed.2d 699 (1987).

■ The right to represent oneself does not attach until it is asserted "clearly and unequivocally." *Faretta, supra,* at 835, 95 S.Ct. at 2541. Equivocation is a broad concept which not only constitutes speech but takes into account conduct as well as other expressions of intent. *Bartlett, supra,* at 100.

■ In order to determine if the waiver was knowing, voluntary and unequivocal, the Court must review the trial court record. The record is clear that on more than one occasion petitioner clearly and unambiguously asserted his desire to represent himself at trial. Initially, when informed that his attorney in the first trial had withdrawn, petitioner stated: "I also wish to be my own counsel, as I believe ... this is my right by the Constitution of the United States ..." (Misc. Proceedings of May 13, 1975 at 3). This statement was made after the trial court granted the defendant an adjournment to confer with his parents. Thereafter, at petitioner's request, the trial judge allowed a public defender to advise the defendant during the course of the trial. The judge again asked the petitioner if he wanted to conduct his own defense and the petitioner replied that he did (Misc. Proceedings of May 13, 1975 at 5). The trial judge ordered a one-week adjournment so that petitioner could have time to discuss the matter with the court-appointed advisor.

The record further indicates that the court-appointed advisor familiarized petitioner with the services that the public defender's office provided to defendants. The court asked the petitioner if he had any legal expertise and advised him of the consequences of attempting to represent himself. The court then asked the petitioner if he still wanted to proceed *pro se* (Misc. Proceedings of May 20, 1975 at 15–17). The petitioner responded by claiming that he had no legal experience and that he understood the consequences of representing himself. The court again offered the petitioner an adjournment so that he could obtain an attorney, but the petitioner refused (Misc. Proceedings of May 20, 1975 at 18). In response to the trial judge's inquiry before jury selection, the petitioner again asserted his desire to proceed *pro se* (Proceedings of October 6, 1975).

The record indicates that defendant's waiver of his Sixth Amendment right to counsel was voluntary and knowing. Moreover, on each occasion, petitioner's statements show a "purposeful choice reflecting an unequivocal intent to forego the assistance of counsel." *United States v. Tompkins*, 623 F.2d 824,

827–28 (2d Cir.1980). Finally, the record does not support a finding of equivocation or vacillation on petitioner's part in the five months which passed from the time petitioner initially asserted his right to self-representation to the start of the second trial.

Accordingly, I find that the petitioner has failed to prevail on this habeas corpus ground.

## III. Marshaling Evidence and Jury Instructions

### A. Marshaling Evidence

Petitioner challenges the portions of the trial judge's charge which marshaled the evidence presented in the case, arguing that the judge presented only the evidence most favorable to the prosecution.

Under New York Law, when charging the jury, the trial judge must state the fundamental legal principles applicable, but need not summarize the evidence except to the extent necessary to explain the application of the law to the facts of the case. N.Y. Criminal Procedure Law § 300.10(2). The critical issue in reviewing a trial court's marshaling of the evidence is whether the defendant was denied a fair trial. *People v. Saunders*, 64 N.Y.2d 665, 667, 485 N.Y.S.2d 250, 474 N.E.2d 610 (1984).

In the present case, there is no indication in the record that the petitioner was denied a fair trial as a result of the marshaling of the evidence by the trial judge. *See, Johnson v. Scully*, 727 F.2d 222 (2d Cir.1984); *Jenkins v. Bara*, 663 F.Supp. 891 (E.D.N.Y.1987). Petitioner claims that while the trial judge's summary of the prosecution's case consumed 14 pages of the trial transcript, the summary of the defense case only took 6 pages. However, the trial court need not give "equal time" to each side, especially considering the fact that the prosecution presented the majority of the evidence. *Scully, supra*, 727 F.2d at 226–227. Moreover, before marshaling the evidence, the trial judge gave curative instructions stating that he "did not intend to evade into [the jurors] province or infer that such has been established or whether such constitutes the only evidence. Such of course is always yours to do." (T. 2189).

Consequently, I find that petitioner's claim has no merit.

### B. Jury Instructions

Petitioner has raised several arguments regarding the constitutionality of the jury charge given at trial. Each claim will be discussed separately.

#### 1. Failure to Charge a Lesser Included Offense.

Petitioner's first claim is that he was denied due process when the court refused to submit the charge of second degree manslaughter to the jury as a lesser included offense of second degree murder.

As a general matter, "[i]n order to obtain a writ of habeas corpus in federal court on the ground of error in a state court's instruction to the jury on matters of state law, the petitioner must show not only that the instruction misstated state law but also that the error violated a right guaranteed to him by federal law." *Casillas v. Scully*, 769 F.2d 60, 63 (2d Cir.1985); *see Cupp v. Naughten*, 414 U.S. 141, 146, 94 S.Ct. 396, 400, 38 L.Ed.2d 368 (1973). The standard on a habeas corpus petition is "quite different" from the standard on direct review of proceedings in a federal criminal case. *Rogers v. Carver*, 833 F.2d 379, 381 (1st Cir.1987), *cert. denied*, 485 U.S. 937, 108 S.Ct. 1116, 99 L.Ed.2d 276 (1988). The habeas petitioner thus has the burden of meeting a very high standard—"whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." *Naughten, supra*, 414 U.S. at 147, 94 S.Ct. at 400–01.

The Supreme Court has held that in capital cases, failure to charge lesser included non-capital offenses, where the evidence warrants such a charge, violates the eighth amendment and the due process clause. *Beck v. Alabama*, 447 U.S. 625, 627, 100 S.Ct. 2382, 2384, 65 L.Ed.2d 392 (1980). However, the Court left open the question of whether due process requires a lesser included of-

fense instruction in a non-capital case. *Id.* at 638 n. 14, 100 S.Ct. at 2390 n. 14.

The circuits that have considered this issue are divided. The Fifth, Ninth, Tenth and Eleventh Circuits have held that failure to instruct on the lesser included offense does not present a federal constitutional question and therefore will not be considered in a federal habeas proceeding. *See, e.g. Valles v. Lynaugh,* 835 F.2d 126, 127 (5th Cir.1988); *James v. Reese,* 546 F.2d 325, 327 (9th Cir. 1976); *Chavez v. Kerby,* 848 F.2d 1101, 1103 (10th Cir.1988); *Perry v. Smith,* 810 F.2d 1078, 1080 (11th Cir.1987). Others have held that a due process violation occurs only when the failure to give such an instruction in a non-capital case amounts to so fundamental a defect as to cause "a complete miscarriage of justice." *Tata v. Carver,* 917 F.2d 670, 671 (1st Cir.1990); *Bagby v. Sowders,* 894 F.2d 792, 797 (6th Cir.) (en banc), *cert. denied,* 496 U.S. 929, 110 S.Ct. 2626, 110 L.Ed.2d 646 (1990); *Nichols v. Gagnon,* 710 F.2d 1267, 1272 (7th Cir.1983), *cert. denied,* 466 U.S. 940, 104 S.Ct. 1918, 80 L.Ed.2d 465 (1984); *Deberry v. Wolff,* 513 F.2d 1336, 1338 (8th Cir.1975).

The Second Circuit has not yet ruled on this question. Although the issue has been raised in several cases, the court has declined to reach the issue, finding instead that the evidence did not warrant the lesser-included offense charge. *See, e.g., Knapp v. Leonardo,* 46 F.3d 170, 179 (2d Cir.1995); *Campaneria v. Reid,* 891 F.2d 1014, 1022 (2d Cir. 1989), *cert. denied,* 499 U.S. 949, 111 S.Ct. 1419, 113 L.Ed.2d 471 (1991); *Rice v. Hoke,* 846 F.2d 160, 165 (2d Cir.1988); *Harris v. Scully,* 779 F.2d 875, 880 (2d Cir.1985).

It is likewise unnecessary in this case to decide whether the failure to give an instruction as a lesser-included offense presents a constitutional claim. This is because the trial court correctly ruled that the evidence did not warrant the instruction.

■ It is not disputed that second degree manslaughter is a lesser-included offense of second degree murder. *Campaneria, supra,* 891 F.2d at 1022; *People v. Sullivan,* 68 N.Y.2d 495, 501–02, 510 N.Y.S.2d 518, 522, 503 N.E.2d 74, 77–79 (1986). The question is whether a reasonable view of the evidence would have supported a finding that the defendant committed second degree manslaughter—recklessly[1] causing the death of another—rather than second degree murder—intentionally causing the death of another. *See Rice, supra.*

■ This does not mean, as petitioner contends, that the trial court must be able to exclude every reasonable hypothesis of recklessness. This test was rejected by the New York Court of Appeals in *People v. Scarborough,* 49 N.Y.2d 364, 426 N.Y.S.2d 224, 402 N.E.2d 1127 (1980). Instead, the court stated the relevant inquiry as follows:

> [I]f, on the whole record, there is not some identifiable, rational basis on which the jury could reject a portion of the prosecution's case which is indispensable to establishment of the higher crime and yet accept so much of the proof as would establish the lesser crime, then the lesser included offense may not be submitted.

*Id.,* 49 N.Y.2d at 369–70, 426 N.Y.S.2d at 227, 402 N.E.2d at 1130. The test is not whether "any view" of the evidence would support a jury's determination that the defendant did in fact commit the lesser, but not the greater, offense; the test is whether a "reasonable view" of the evidence would support such a determination. *Id.,* 49 N.Y.2d at 373, 426 N.Y.S.2d at 229, 402 N.E.2d at 1132. Thus, "[w]here ... examination of the record discloses no identifiable basis on which a jury might reasonably differentiate between segments of the proof and 'charging the lesser included offense would force the jury to resort to sheer speculation,'" no charge is required. *Id.,* 49 N.Y.2d at 371, 426 N.Y.S.2d at 228, 402 N.E.2d at 1130–31 (quoting *Peo-*

---

1. N.Y.Penal Law § 15.05(3) defines "recklessly" as follows, in relevant part:

 A person acts recklessly with respect to a result or to a circumstance described by a statute defining an offense when he is aware of and consciously disregards a substantial and un-

 justifiable risk that such result will occur or that such circumstance exists. The risk must be of such nature and degree that disregard thereof constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation....

*ple v. Discala*, 45 N.Y.2d 38, 43, 407 N.Y.S.2d 660, 664, 379 N.E.2d 187, 190–91 (1978)). "[F]undamentally, the jury should not be permitted to choose between the crime charged and some lesser crime where the evidence essential to support a verdict of guilt of the lesser necessarily proves guilt of the greater crime as well." *Discala, supra*, 45 N.Y.2d at 43, 407 N.Y.S.2d at 664, 379 N.E.2d at 191.

 Under New York law, the distinction between second degree murder, for which petitioner stands convicted, and the lesser crime of second degree manslaughter is that the former requires an intent to cause death, N.Y.Penal Law § 125.25(1), while the latter concerns merely causing the death of another recklessly. N.Y.Penal Law § 125.15(1). "Thus, a prima facie case of second degree manslaughter in New York entails 'the creation of a substantial and unjustifiable risk; an awareness and disregard of the risk on the part of defendant; and a resulting death.'" *Harris v. Scully, supra*, 779 F.2d at 880–81 (quoting *People v. Licitra*, 47 N.Y.2d 554, 558, 419 N.Y.S.2d 461, 463, 393 N.E.2d 456, 458–59 (1979)).

 Here, there is no view of the evidence which could support a conviction of second degree manslaughter but not a conviction of second degree murder. The record established that the victim was found with a bullet wound through the back of his neck which penetrated the body from an inch away (T. 156, 162) Moreover, accomplice Kenneth Stankiewicz testified during the robbery at the gas station, he saw petitioner point a pistol at the victim and say: "This is a stick up . . ." (T. 655). Furthermore, Homer Causer's testimony established that petitioner told him that he had to "waste" the victim (T. 1462).

Viewing the evidence in the light most favorable to the petitioner together with the other significant proof developed at trial regarding the weapon, the vehicle and petitioner's motive, there is no rational basis on which the jury could have rejected the prosecution's case regarding the second degree murder and accepted the lesser crime of manslaughter in the second degree.

The cases cited by petitioner do not require a different result as they involved capital offenses. *Hopper v. Evans*, 456 U.S. 605, 102 S.Ct. 2049, 72 L.Ed.2d 367 (1982); *Beck v. Alabama*, 447 U.S. 625, 100 S.Ct. 2382, 65 L.Ed.2d 392 (1980). Furthermore, many of the cases cited by petitioner were decided prior to the New York Court of Appeals 1980 decision in *Scarborough, supra*, and relied on the old rule that "a refusal to charge a lesser-included crime is warranted only where every reasonable hypothesis but guilt of the higher crime is excluded." *People v. Henderson*, 41 N.Y.2d 233, 236, 391 N.Y.S.2d 563, 359 N.E.2d 1357 (1976); *People v. Shuman*, 37 N.Y.2d 302, 372 N.Y.S.2d 60, 333 N.E.2d 363 (1975).

In any event, under the standards applied in the federal habeas cases cited above, the trial court's refusal to charge the jury on manslaughter in the second degree does not amount to so fundamental a defect as to cause "a complete miscarriage of justice." *Tata, supra*, 917 F.2d at 671. As discussed above, the jury was given an alternative to finding petitioner guilty of second-degree murder. Furthermore, this Court should refrain from issuing a ruling which would have the effect of vacating the highest state court's approval of the procedures followed in the trial of petitioner's case.

Accordingly, it was not a denial of due process for the trial judge to refuse to instruct the jury on second degree manslaughter.

## 2. Alibi Charge

Petitioner claims that the trial judge's instructions on his alibi defense unconstitutionally shifted the burden of proof to him on this issue and thus denied him due process.

 The law in New York is clear:

An alibi is not an affirmative or exculpatory defense which the defendant has the burden of proving . . . [A]ny charge that leads a jury to believe or suggests that a defendant has such a burden, unconstitutionally relieves the People of their burden of proving guilt beyond a reasonable doubt . . . [I]n order to avoid confusion and ensure that the jury understands that the

People must always meet their burden of proving that the accused actually committed the crime, an alibi is treated for practical purposes the same as a statutory 'defense' under subdivision 1 of section 25.00 of the Penal Law ... [T]hus, the People have the burden of disproving an alibi beyond reasonable doubt, and a Judge must unequivocally state that burden in the jury charge.

*People v. Victor*, 62 N.Y.2d 374, 377–78, 477 N.Y.S.2d 97, 465 N.E.2d 817 (1984).

 Regardless of state practice with respect to instructions on the subject of alibi defense, the issue upon review of a decision on a federal habeas petition is not whether the state court's "instruction is undesirable, erroneous, or even 'universally condemned,'" *Naughten, supra,* 414 U.S. at 146, 94 S.Ct. at 400, but whether "the ailing instruction by itself so infected the trial that the resulting conviction violates due process." *Id.* at 147, 94 S.Ct. at 400.

In *Wright v. Smith,* 569 F.2d 1188 (2d Cir.1978), the court acknowledged that certain portions of the alibi charge might have implicated a burden shift and that such implication could have been avoided by inserting passages regarding the People's burden of proof. Nevertheless, the court held that viewing the charge as a whole, "the flaws fell far short of plain error and did not reach a constitutional level warranting issuance of a writ of habeas corpus." *Id.* at 1194.

 In this case, as in *Wright,* while certain portions of the trial judge's instructions might have implicated shifting of the burden of proof, the alibi charge in its entirety did not violate defendant's due process rights. After beginning the alibi charge, the court clearly advised the jury as to the burden of proof: "You have already been instructed that it is up to the People to prove the defendant's guilt beyond a reasonable doubt and this includes all elements of the crime, *including his presence at a stated place and his committing or participating in certain acts at the place at a given time.*" (T. 2202) (emphasis added).

Accordingly, petitioner's due process claim on this ground must fail.

## 3. Sandstrom Violations

 In *Sandstrom v. Montana,* 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979), the Supreme Court held that a jury instruction that "[t]he law presumes that a person intends the ordinary consequences of his voluntary acts" violates the defendant's due process rights because it tends to shift the burden of proof to the defendant on the issue of intent.

 The petitioner claims that the jury charge on intent and felony murder unfairly shifted the burden of proof to defendant. Each charge will be addressed separately.

### a. Intent

The trial judge's instruction on intent stated as follows:

Now it is a general rule of law of very general application, based on observation and experience, that a man is presumed to intend the natural and necessary consequences of his act *unless* the act was done under circumstances or conditions which preclude the existence of such an intent ...

(T. 2231–2232) (emphasis added). The petitioner cites *Arroyo v. Jones,* 685 F.2d 35 (2d Cir.), *cert. denied,* 459 U.S. 1048, 103 S.Ct. 468, 74 L.Ed.2d 617 (1982) as support. However, *Arroyo* is distinguishable from the present case. In that case, the court held that the presumption language, similar to the present charge, was not harmless and violated defendant's due process rights. *See id.* at 41. In *Arroyo,* the jurors had asked several times for clarification of the charges. The erroneous language was given to the jurors in the *supplemental* charge which must be viewed in a special light. *Id.* at 39–40 (emphasis added). The court gave numerous reasons why a supplemental charge is so crucial including the fact that the instructions will be the freshest in the juror's minds. *Id.* at 39.

However, numerous cases have held similar language to not violate the defendant's due process rights after taking the entire charge into account. *See, e.g., Rock v. Coombe,* 694 F.2d 908 (2d Cir.1982), *cert.*

denied, 460 U.S. 1083, 103 S.Ct. 1773, 76 L.Ed.2d 345 (1983); *Mancuso v. Harris*, 677 F.2d 206 (2d Cir.), *cert. denied*, 459 U.S. 1019, 103 S.Ct. 382, 74 L.Ed.2d 514 (1982); *Nelson v. Scully*, 672 F.2d 266 (2d Cir.), *cert. denied*, 456 U.S. 1008, 102 S.Ct. 2301, 73 L.Ed.2d 1304 (1982). In the present case, reading the entire charge as a whole, the petitioner was not denied due process. The presumption language was contained in the main charge, not the supplemental instructions. The entire charge is a balanced statement that intent is to be determined from conduct, speech, and all of the circumstances (T. 2231). In addition, the trial judge used numerous occasions in the supplemental charge to point out to the jurors that the prosecution had the burden of proving intent beyond a reasonable doubt (T. 2267–2269). Finally, the use of a qualifying "unless" in the presumption language makes the charge both "ameliorative and free of any improper burden-shifting effect...." *Mancuso, supra*, 677 F.2d at 210.

### b. Felony–Murder Charge

■ Petitioner argues that the portion of the jury charge regarding the felony-murder count violated his due process rights. The charge, in pertinent part, states as follows:

> Basically the crime set forth under the second count of the indictment is murder without proof of intent, which we sometimes call in the law, felony murder.... From this definition you will see, when a killing is done in the course of committing or attempting to commit a robbery or an immediate flight from the commission of such or such attempt, it is not necessary that the killer intended to cause death. That is, whether or not he intended to cause death is not an element of this crime; and in such case our law implies an intent by setting up a legal fiction which takes the place of an intent to kill.... By this rule of law you will see the intent to commit the felony in question, that is, robbery, is automatically considered, under our law, as an intent to kill.

(T. 2165–2166).

The petitioner cites *Francis v. Franklin*, 471 U.S. 307, 105 S.Ct. 1965, 85 L.Ed.2d 344 (1985), as support for his argument. In *Franklin*, the issue was whether a reasonable juror could have understood the offending portion of the charge as a mandatory presumption that shifted the burden of persuasion on the element of intent to the defendant. The court held that it could. *Id.* at 325, 105 S.Ct. at 1977.

In the present case, petitioner's intent was not an issue at his trial for the felony murder. Petitioner's proof at trial indicated that he denied any involvement in either the robbery or the murder (T. 1606). Petitioner's defense focused on an attempt to discredit the witnesses who testified to his involvement in the crimes. When viewed as a whole (T. 2165–2170), the charge makes it clear that the jury was to "consider all of the evidence in the case" in deciding whether the petitioner possessed the intent necessary to commit the crime of robbery. *Mancuso v. Scully*, 824 F.2d 154 (2d Cir.1987); *Mancuso, supra*, 677 F.2d at 211.

Accordingly, I find that petitioner's due process rights were not violated by an improper shifting of the burden of proof in the jury instructions.

### C. Prosecutorial Misconduct

Petitioner contends that the prosecution's misconduct during the trial and summation was so prejudicial as to deprive him of a fair trial. The petitioner cites the following incidents, along with others, as proof of misconduct during the trial: 1) destruction of police officer's notes; 2) questions about uncharged and unrelated crimes; and 3) impeachment of prosecution's own witness. Each issue will be discussed separately.

■ The most recent case on the standard of review for prosecutorial misconduct in this circuit is *Bentley v. Scully*, 41 F.3d 818 (2d Cir.1994). Analyzing the case in terms of *Brecht v. Abrahamson*, 507 U.S. 619, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993), the Second Circuit held that in order that habeas relief be granted, petitioner must make a showing that he suffered *actual prejudice* because the prosecution's misconduct "had a substantial and injurious effect or influence in determining the jury's verdict."

*Bentley, supra,* 41 F.3d at 824 (emphasis added). Moreover, in assessing whether this standard has been met, it is relevant to consider the severity of the misconduct, curative measures, and the *certainty of conviction absent the misconduct. Id.; Blissett v. Lefevre,* 924 F.2d 434 (2d Cir.1991).

### 1. Failure to Disclose Witness's Name and Statement

 Petitioner contends that the prosecutor's failure to disclose Homer Causer's name and statement prior to his testimony denied him a fair trial.

Petitioner has not shown any "actual prejudice". The trial court granted petitioner's request for a suppression hearing, in the middle of the trial, in order to see if Causer's statements were admissible (T. 1372–73). Furthermore, petitioner's cross-examination of the witness did not begin until six days after he became aware of Causer's status as a witness and after receiving a copy of the witness' statement to the police.

### 2. Questioning about Petitioner's Silence

 Petitioner contends that the following exchange between the prosecutor and Kenneth Stankiewicz constituted prosecutorial misconduct as it raised questions about petitioner's silence:

A: I asked [petitioner], "What went wrong at the gas station?", and he didn't say anything. And I asked him if he shot the kid. He still didn't say anything.

Q: Did you look him in the eye? Did your eyes meet when you talked with him?

A: Yes sir, they did.

Q: And he was silent?

A: Yes sir, he was.

Q: No answer?

A: None.

(T. 668–69).

However, this type of questioning was proper because the witness was testifying about a private conversation with the petitioner prior to his arrest. The cases petitioner cites as authority are inapposite because they involve testimony of police officers regarding the defendant's post-arrest silence. *See, e.g., People v. Conyers,* 49 N.Y.2d 174, 424 N.Y.S.2d 402, 400 N.E.2d 342, *vacated,* 449 U.S. 809, 101 S.Ct. 56, 66 L.Ed.2d 12 (1980).

### 3. Summation

Petitioner cites various instances where he alleges that the prosecutor deliberately tried to mislead and confuse the jury. The references include, but are not limited to: 1) instructing the jury as to the law (T. 1980), 2) asking rhetorical questions (*see* T. 1986, 1994, 2002–2003), 3) referring to the grand jury as "duly constituted" (T. 1977); and 4) stating that witnesses' testimony corroborated prosecution's theory (*see* T. 1988–90, 1998–99, 2014–15).

 Petitioner has also failed to demonstrate actual prejudice from the prosecutor's remarks in summation. The evidence of guilt introduced by the prosecution at trial was substantial. First, there was the testimony of Stankiewicz who testified that he had agreed with the petitioner to commit a robbery at the gas station (T. 654–655). Petitioner's co-worker, Gaddis, also testified that defendant purchased a .32 caliber Harrington and Richardson pistol from him (T. 1029–31). The firearms expert stated that the bullet that killed the victim was from a .32 caliber pistol, most likely fired from a handgun manufactured by Harrington and Richardson (T. 1421, 1423, 1432). The expert also testified that the bullets and the empty cartridge casings found behind defendant's barn were fired form a .32 caliber Harrington and Richardson revolver (T. 1435, 1552). This testimony, together with all of the other evidence produced at trial, clearly indicated that petitioner has failed to shown any actual prejudice by prosecution's comments during summation.

Accordingly, I find no merit to petitioner's claim based on prosecutorial misconduct.

### D. Evidentiary Rulings

As to evidentiary issues, petitioner specifically claims that he was denied a fair trial by 1) destruction of police officer's notes; 2) questions about uncharged and unrelated

crimes; 3) limiting questioning on petitioner's prior conviction; and 4) impeachment of the prosecution's own witness.

 Erroneous evidentiary rulings do not automatically give rise to a grant of habeas relief. *See, e.g., Rosario v. Kuhlman*, 839 F.2d 918 (2d Cir.1988). "Rather the writ would issue *only* where petitioner can show that the error deprived her of a *fundamentally fair* trial." *Taylor v. Curry*, 708 F.2d 886 (2d Cir.), *cert. denied*, 464 U.S. 1000, 104 S.Ct. 503, 78 L.Ed.2d 694 (1983) (emphasis in original). Moreover, not all state evidentiary errors rise to the level of a federal constitutional violation. *See Ayala v. Leonardo*, 20 F.3d 83, 91–92 (2d Cir.), *cert. denied*, — U.S. ——, 115 S.Ct. 232, 130 L.Ed.2d 156 (1994).

 Petitioner's claim does not demonstrate an erroneous ruling by the trial judge. For instance, the discarding of the handwritten notes by the police officer when he prepared his typed report does not deprive the accused of a fair trial. *See People v. Paranzino*, 40 N.Y.2d 1005, 391 N.Y.S.2d 391, 359 N.E.2d 981 (1976). By the same token, petitioner's statements to Homer Causer regarding certain uncharged crimes (T. 1452–55) were properly admitted not to establish identity but as evidence of guilty knowledge. *See People v. Ventimiglia*, 52 N.Y.2d 350, 438 N.Y.S.2d 261, 420 N.E.2d 59 (1981).

 In addition, petitioner claims that the trial judge erred when it denied his motion to limit cross examination on his previous conviction for armed robbery. As a result, petitioner did not testify at trial. However, admission of prior convictions to impeach a defendant is within the sound discretion of the trial court. *See People v. Pavao*, 59 N.Y.2d 282, 464 N.Y.S.2d 458, 451 N.E.2d 216 (1983).

 Finally, New York law allows impeachment of one's own witness if the testimony is material to the case and "tends to disprove" the position of the party. N.Y.Criminal Procedure Law § 60.35(1); *People v. Mercado*, 162 A.D.2d 722, 557 N.Y.S.2d 123 (2nd Dept.1990). The prosecution's impeachment of Nancy Washburn's testimony regarding petitioner's remarks about the use of the vehicle used in the robbery falls within the statutory definition and was properly admitted (T. 283–84).

 Even assuming that the trial judge erred in allowing certain evidence in, the record fails to show how this evidence was a "substantial, significant or crucial factor" in denying petitioner a fundamentally fair trial. *Collins v. Scully*, 755 F.2d 16, 19 (2d Cir. 1985).

### E. Trial Court Errors

 Petitioner also argues that the trial court erred when it allowed a prosecution witness to be recalled to correct her previous testimony, and the court should have granted a mistrial after Gary Maha's testimony.

Petitioner's claims of trial court error all involve "purely state issue[s] of a trial judge's power to conduct the trial and does not implicate appellant's due process rights." *See Bossett v. Walker*, 41 F.3d 825, 830 (2d Cir.1994).

### 1. Recall of Prosecution Witness

 The recall of a prosecution's witness to the stand is within the sound discretion of the trial court. *See Feldsberg v. Nitschke*, 49 N.Y.2d 636, 427 N.Y.S.2d 751, 404 N.E.2d 1293 (1980) (trial court has discretion to allow introduction of evidence after close of offerer's case or prohibit same).

 Moreover, petitioner did not have a right to be present at the *in camera* hearing because the hearing did not constitute a material stage of trial. Petitioner's "presence is required only where his absence would have a substantial effect on his ability to defend...." *People v. Velasco*, 77 N.Y.2d 469, 472, 568 N.Y.S.2d 721, 570 N.E.2d 1070 (1991) (citations omitted). As the record indicates, the witness initiated the meeting with the judge to discuss how to alleviate her previous incorrect testimony which resulted from misunderstanding the questions propounded (T. 868–870). The trial court held an *in camera* hearing with the witness without the presence of *either* party. In addition, petitioner had an opportunity to cross exam-

ine the witness once she was recalled (T. 874–880).

### 2. Granting Mistrial After Witness's Testimony

Petitioner objects to the court's failure to declare a mistrial after Gary Maha's testimony in response to prosecution's questioning:

Q: What police officers accompanied you on that particular time?

A: Investigator Sheldon was with myself and Chief Deputy Green was with us and also a *parole officer.*

(T. 395) (emphasis added).

Petitioner argues that the reference to the parole officer was prejudicial and denied him a fair trial.

A trial court's power to declare a mistrial must be exercised with the greatest caution, under urgent circumstances, and for very plain and obvious causes. *People v. Baptiste,* 72 N.Y.2d 356, 533 N.Y.S.2d 853, 530 N.E.2d 377 (1988). In the instant case, the inadvertent utterance regarding the parole officer was not so obvious and prejudicial as to require a mistrial. The testimony did not state that it was petitioner's parole officer. Even if there was error, the curative instructions (T. 404) ameliorated whatever prejudice that may have occurred. *See People v. Banks,* 130 A.D.2d 498, 515 N.Y.S.2d 81 (2nd Dept.1987); *People v. Williams,* 118 A.D.2d 612, 499 N.Y.S.2d 213 (2nd Dept. 1986).

Accordingly, I find that petitioner has failed to demonstrate that trial court errors denied him a fair trial.

### *CONCLUSION*

Based on the foregoing, it is recommended that the petition for habeas corpus be denied, and the case dismissed.

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby

**ORDERED,** that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of this Court within ten (10) days after receipt of a copy of this Report and Recommendation in accordance with the above statute, FED.R.CIV.P. 72(b) and Local Rule 72.3(a)(3).

The district court will ordinarily refuse to consider on *de novo* review arguments, case law and/or evidentiary material which could have been, but was not presented to the magistrate judge in the first instance. *See, e.g., Paterson–Leitch Co., Inc. v. Massachusetts Municipal Wholesale Electric Co.,* 840 F.2d 985 (1st Cir.1988).

*Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.* Thomas v. Arn, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Wesolek, et al. v. Canadair Ltd.,* et al., 838 F.2d 55 (2d Cir.1988). The parties are reminded that, pursuant to Rule 72.3(a)(3) of the Local Rules for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." *Failure to comply with the provisions of Rule 72.3(a)(3), or with the similar provisions of Rule 72.3(a)(2) (concerning objections to a Magistrate Judge's Decision and Order), may result in the District Court's refusal to consider the objection.*

Let the Clerk send a copy of this Order and Report and Recommendation to the attorneys for the parties.

**SO ORDERED.**

DATED: Buffalo, New York
August 8, 1995